PUBLIC SERVICE GAS COMPANY

*v.*

THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK
AND PUBLIC LIGHTING SERVICE CORPORATION.

[Submitted June 27th, 1916.   Decided July 20th, 1916.]

1. A gas company enjoying a franchise to lay and maintain mains in city streets is under the duty to furnish gas to the citizens and the city.

2. The charges of a gas company for gas must be reasonable.

3. When a gas company demands an unreasonable price from a city for gas, the city may offer a reasonable price, and upon refusal of the company to furnish gas at that price, the city may bring *mandamus*, where the supply has not yet been commenced, or may sue in equity to enjoin stoppage of supply being furnished.

4. A city cannot compel a gas company to furnish gas for street lamps supplied and lighted and extinguished by a foreign lighting corporation furnishing the city with lighting equipment, and to depend upon and accept the foreign company's records of the gas consumed as the basis for compensation, these records to be based on estimates, or else, if the records are not satisfactory to it, to install meters or employ inspectors at its own expense to check up or measure the quantity of gas consumed, since such method does not ascertain with reasonable certainty the quantity of gas consumed, and the gas company is not obliged to go to the extra expense of meters or inspectors unless compensated therefor.

---

On order to show cause why injunction should not issue. Heard on bill and affidavits of complainant and answering affidavits of the defendants.

*Mr. Frank Bergen,* for the complainant.

*Mr. Spaulding Frazer,* for city of Newark.

*Mr. Jerome T. Congleton,* for the defendant, Public Lighting Service Corporation.

FOSTER, V. C.

The complainant has been since October 1st, 1909, and still is, engaged in supplying gas in the city of Newark, for public and private use, and lighting some of the public streets of the city with gas, by means of posts, lamps and burners, connected with its mains by service pipes.

It is the only company engaged in that business in the city, and it is the owner of gas works and many miles of gas mains in the city.

Gas is furnished by complainant to consumers in the city of Newark by means of meters at a uniform standard of prices, which is on file with the board of public utility commissioners of the state, and no gas is furnished to any consumer unless measured by meter, except in cases where complainant lights the streets and other public places of the city under contract.

The contract between complainant and the city for municipal lighting expired March 1st, 1916.

About May 15th, 1916, the city awarded a contract to the defendant, Public Lighting Service Corporation, for the equipment, with burners, of about two thousand lamp posts, owned by the city, for the supplying of street gas light. By the terms of this contract the defendant, Public Lighting Service Corporation, agreed for the period of about three years from the date thereof, to supply and maintain certain standard burners upon the city's posts, and to light and extinguish these lamps according to the specifications of the contract.

This contract was awarded after the city had advertised for proposals for street lighting in two forms, viz.:

The first proposal asked for the supplying of gas lamps, the maintenance thereof and the lighting and extinguishing of the same; and secondly, for the supplying of gas at such fixtures.

On April 6th, 1916, complainant sent the city a proposal for the maintenance of two thousand or more street gas lamps, including the supplying of gas therefor, and providing the necessary fixtures in accordance with the contract between it and the city which had recently expired, and offered this service upon its standard rates filed with the public utility commissioners. This

25

proposal was not in accordance with the advertised specifications of the city and was not considered as a formal bid by the city authorities.

As a result of the contract between the city and the lighting corporation, on June 5th, 1916, the equipment of complainant on the lamp posts was directed by the city authorities to be removed forthwith, so that the equipment of the Public Lighting Service Corporation could be installed in its place.    Complainant objected to the installation of other lamps than its own, to use gas from its mains, unless an agreement was previously made for installing meters at suitable places to be provided by the city to measure the quantity of gas used by the substituted lamps.

Under date of June 16th complainant was again notified by the city engineer to remove its lanterns and fixtures from approximately two hundred lamp posts, the work of removal being directed to commence the following morning at eight o'clock, and complainant was at the same time notified that if it desired that the gas consumed by the substituted burners should be measured by meter, that it immediately install meters upon the services supplying these lamps.

Complainant, in acknowledging the receipt of this last notice, again objected to the installation of the lighting corporation's lamps, to use gas from it mains, until the city had provided, as previously requested, suitable places in which meters could be installed.

About June 17th the defendant, Public Lighting Service Corporation, removed over fifty of complainant's lamps and substituted its own lamps therefor, and lighted and kept the same lighted on the nights of June 17th and 18th, with gas from the mains of complainant, and it is admitted that the defendants intend, unless restrained, to remove all of complainant's lamps from the city's posts and substitute other lamps of the lighting corporation's in their place, and have these lights supplied by gas from complainant's mains.    On this showing, a rule to show cause with interim restraint was issued by Vice-Chancellor Howell, preventing defendants from taking gas from complainant's mains except on the conditions stated therein.

The defendant, Public Lighting Service Corporation, is a corporation of the State of New York, authorized to manufacture, furnish, maintain, light and extinguish gas lamps for street lighting purposes, but it has no franchise for carrying on a public lighting business or for supplying gas.

It has filed a certificate to authorize it to do business in this state. It claims to own or control a lamp, or burner, equipped with a governor to regulate the supply of gas and to insure uniformity thereof, and in the opinion of its engineers, the gas consumption, as determined by means of governors, is as accurate as the measurement of gas by meters.

The dual contract system, which the city of Newark desires to adopt for street lighting, whereby one contract calls for the equipment of the lamps and the lighting and extinguishing of the same, and another contract provides for supplying gas to such lamps, is in force, to some extent, in New York, Chicago and a number of other cities, and the average consumption of gas in these cities ranges from three to three and five-tenths cubic feet per lamp per hour, and it is claimed by defendants that their lamps are of such a character that each lamp in effect constitutes a meter, provided the number of hours which each lamp is burning is ascertained, and that the construction of the governors on these burners is such that a uniform flow of gas is maintained to the lamps, despite variances in pressure from one and five-tenths to six inches water pressure, and the defendants further claim that the pressure maintained by complainant in Newark never shows a variance as great as this, and that each of their lamps installed, or to be installed, in Newark will consume a uniform quantity of gas amounting to three and three-tenths cubic feet per hour, and that in order to ascertain the quantity of gas consumed, it is only necessary to know the total number of lamps and the total number of hours during which they are burning.

Complainant claims that the gas used by defendants cannot be measured accurately by merely ascertaining the quantity that passes through a burner at a particular time, for the following reasons, among others—*first,* that the pressure of gas in the mains of a gas company, and particularly in Newark,

varies in different localities, according to the elevation of the land; *second,* that the pressure varies according to the distance from the holders or source of supply; · *third,* according to the quantity that is being taken throughout the territory served by the company at a given time, which causes variations of pressure; and *fourth,* according to the variation in the opening of the burner, sometimes. the flow of gas being reduced by carbon or other deposits, and at other times when the opening is unobstructed, a much larger quantity of gas will pass through. And it further claims that by the contract between defendants, complainant will have no control or supervision over the number of hours the lamps will burn,. or the time when its gas will be turned on or off from the lamps already installed, or from the two thousand lamps which it claims defendants intend · to install; that the lamps so installed cannot all be turned on or off at the same time, and that in consequence the quantity of gas used would not be the same on any two days; that there is no certain way by which the quantity of gas consumed by these lamps can be ascertained without meters, and that there is no practical way of installing meters on or near the lamp posts.

Defendants admit that these objections are "verbally true," but are inaccurate as applied to the conditions in this case, because they claim the variances mentioned are not great enough to affect the accuracy of their governors, and because the reduction of the flow of gas by carbon or other deposit would not' be injurious to complainant.

The situation presented is quite similar to that in the case of *Public Service Corporation* v. *American Lighting Co. et al., 67 N. J. Eq. 122,* except that in this case the city, instead of the lighting company, is the active litigant, although in that case Vice-Chancellor Pitney treated the defendants' contention the same as if urged by the city alone, and applied to this contention, and decided the case by the test of reasonableness.

Applying the same test to the fact exhibited here, we find complainant in the enjoyment of a monopoly in street lighting by gas, in the city of Newark, under a contract which it evidently found profitable, and which, by its proposal to the city authorities it sought to continue; we find the defendant, Public

Lighting Service Corporation, entering complainant's field as a competitor, for part of complainant's contract with the city, and anxious to supersede complainant's lamps and burners with lamps and burners of its own, and offering, it is claimed, this service at less cost to the city; we find the city of Newark anxious to make this contract with its co-defendant, believing it will obtain as good, if not better service, at a reduced cost to the city per year, and we find complainant contending that this saving to the city, if it occurs, will result from the illegal appropriation of its property without just compensation.

By reason of the franchise which complainant enjoys of laying and maintaining mains in the streets of the city to furnish gas, the obligation is imposed on it to furnish gas to the citizens of the city and to the municipality, but as Vice-Chancellor Pitney held in the case mentioned, "the right to demand and the obligation to furnish gas must be subjected to reasonable terms. One of those terms is that a reasonable price shall be paid. But, as before remarked, the city is not at the mercy of the gas-producing company; for, if the latter demands an unreasonable price, the city may offer what it conceives to be a reasonable price, and in case the gas company refuses to furnish gas at that price, the city has its remedy in the courts either by *mandamus,* where the supply has not yet been commenced, or in equity for an injunction, where such supply is being furnished, to enjoin its stoppage."

From the facts stated, it appears that this controversy has not reached the stage where the gas company has refused to furnish gas to the city, but that the city's insistment is that complainant must furnish gas for the lamps supplied and lighted and extinguished by the city's co-defendant, the lighting corporation, and that complainant must depend upon and accept the lighting company's records of the gas consumed, as the basis for its compensation, without any rate being specified, unless we assume the rates of complainant on file with the public utility commissioners are to be accepted by the city for such purpose. And as the records of the lighting corporation are to be based on the estimated average consumption of gas by their burners of three and three-tenths cubic feet per lamp

per hour, we are thus brought to the consideration of the real questions in this case, viz.: Are the demands of the city fair and reasonable when it insists that complainant must furnish gas to light all the lamps the lighting corporation may install under contract with the city, and that complainant must accept the records of the lighting corporation as to the quantity of gas consumed per lamp per hour, and also the number of hours each lamp was burning each night; or, as an alternative, that if such records are not satisfactory to complainant, it must then install meters to measure the quantity of gas consumed; or, that if it is not practicable to install meters, complainant, as a further alternative, must then accept defendants' statement that the new lamps will only consume three and three-tenths cubic feet of gas per hour, and with this as a basis, that complainant can then employ a staff of inspectors to keep a record of the time when each lamp is lighted and extinguished every night.

All the parties recognize that as a basis for determining what is a reasonable price to be paid by the city for the gas it asks complainant to supply, it is essential to ascertain with reasonable certainty the quantity of gas consumed. This is usually done by means of gas meters, and these meters determine the quantity of gas used by all consumers in Newark, except the gas supplied for street lighting purposes, and gas for this purpose is supplied under contract, in which it is to be presumed the gas company adequately protects itself from loss by its control over the supply, and in the prevention of waste, as well as over the hours of consumption and like elements entering into the manufacture and sale of its product.

The method suggested by defendants for ascertaining the quantity of gas that will be consumed by each of the lamps they intend to install, is open to the objection that it is based on an estimated average of the consumption per lamp per hour, said to be the result of experience covering a number of years in other municipalities, and which estimated average defendants claim would not be affected by the variation in pressure in complainant's gas system. This claim, strongly disputed by complainant, appears to be largely a matter of engineering specu-

lation based on data, about which we have no information. In every city in which it is claimed these burners of defendants have proven satisfactory to the city and the gas company, the defendants' affidavits disclose that a definite contract has been entered into between the city and the gas company for the supply of gas to these lamps, on terms presumably mutually satisfactory. No such contract exists in this case, and none has been proposed. A further objection to defendants' demand is the suggestion to have the quantity of gas consumed determined by records kept by the lighting corporation, the competitor in part at least of complainant.

What assurance has complainant that these records will be accurately or completely kept. It will be to the interest of the lighting corporation to show the smallest possible consumption of gas for satisfactory service; it will have no interest to stop waste, or to see to it that lamps are not lighted earlier or extinguished later than its contract with the city calls for; it will have every incentive to show results indicating as good, if not better service to the city, at less cost than formerly, and there will be nothing to show that this saving to the city, if it takes place, is not at complainant's expense. The alternative suggested, if complainant does not like this method of ascertaining how much of its property defendants are taking, that it can install meters at any or all lamp posts and measure the gas consumed, is both impracticable and unreasonable. The city owns the posts and there is no receptacle in or near any of them in which a meter could be installed without danger of injury to it, or its possible destruction, or where the meters would be free from interference; furthermore, it has not been suggested how complainant is to be compensated for the cost of furnishing and installing each of the two thousand meters that may be required for lamps the city may install. Complainant's rates on file were evidently made without such expenditure as the installation of these meters would involve being contemplated, and no suggestion has been made by defendants regarding the rate complainant should charge the city, in case such meters were installed. The further suggestion of the defendants that complainant can, instead of installing

meters, employ a staff of inspectors to make a record of the hours when the lamps were lighted and extinguished, is also unreasonable, and would only. result in disputes and discord between the lighting corporation and the gas company, and in case their records did not agree, in trouble between the city and the gas company, and besides, no arrangement or rate has been suggested to reimburse complainant for the expenses involved in maintaining the corps of men that would be required for such purpose.

I do not find any of the methods suggested by defendants for compensating complainant to be certain, fair or reasonable. The city admits it is acting arbitrarily in the matter in removing complainant's lamps from the posts and substituting those of the lighting corporation, and in demanding that complainant furnish gas for such lamps, and seeks to justify its action by the claim that complainant having a monopoly by its ownership of the only gas plant in the city, is also acting arbitrarily in refusing to make separate proposals or contracts for street lighting in the manner desired by the city.

This attitude of complainant does not alter the rights and obligations of the parties. Since the termination of its contract in March last, complainant has continued to light the streets of the city with gas, and it can be compelled to continue for a proper compensation, to supply gas to the city for lamps which the city owns or controls. Such compensation must, however, be reasonable and just, and must be based on some method that will correctly ascertain the fair and reasonable value of complainant's property taken by the city.

There has been nothing shown or suggested in the case to indicate that complainant is not ready and willing to furnish gas as desired to the city, or to the lighting corporation, if properly paid therefor; nor has anything been shown that would indicate that complainant is unwilling to enter into a contract for supplying gas on terms and conditions similar to those prevailing in other municipalities, where the dual contract system for street lighting is in force.

For the reasons stated I will advise that the restraint be continued until the final hearing of the cause.