23385. LAWRENCE *v.* ATLANTA GAS-LIGHT COMPANY.

DECIDED JULY 13, 1934. REHEARING DENIED SEPTEMBER 20, 1934.

*George F. Fielding, Augustus M. Roan,* for plaintiffs.

*Alston, Alston, Foster & Moise, Henry J. Miller,* for defendant.

GUERRY, J. W. J. Lawrence filed suit for damages against the Atlanta Gas-Light Company. The defendant company filed both general and special demurrers to the petition, which were sustained, and the action was dismissed. To this judgment he excepted. His petition, after alleging the necessary jurisdictional facts, alleges: "That prior to July, 1930, your petitioner resided at No. 378 McDonough road, S. E., in the city of Atlanta, said county, and that he maintained at said place a home and household fully furnished, and that the members of his family consisted

of himself and his wife. 4. That at the time petitioner moved into said house he made arrangements with said defendant for the use of gas for cooking, heating, and other purposes, and, to obtain same, complied with all the requirements made by said defendant, and that thereafter defendant supplied petitioner with gas and petitioner paid his bills monthly as and when they were presented to him. 5. That in July, 1930, petitioner's wife became ill and entered a hospital and it became necessary for petitioner to give up his home, and that he at said time notified the defendant of this fact and instructed it to cut off the gas; that in due course of time said defendant presented petitioner with a final bill, which petitioner paid. 6. That for approximately a year thereafter petitioner had no established home, but boarded, and that on or about the 16th day of June, 1931, he again established and furnished a home for himself and wife at 71 Claire Drive, S. E., and at said time petitioner again entered into a contract with the defendant under which defendant agreed to supply petitioner with gas, and petitioner again complied with the requirements to obtain same demanded by the defendant and made a deposit of $5 with the defendant, and that thereafter said gas was furnished and the petitioner paid his bills. 7. That during the month of January, 1932, petitioner moved his home from said Claire Drive location to No. 28 Gould street, S. E., and made arrangements with said defendant for said gas service in his new home, and that defendant furnished petitioner with gas and petitioner paid his bills for the gas used. 8. That on or about the 9th day of November, 1932, the defendant informed petitioner that he owed an old account incurred at the McDonough road address, but that said defendant did not state the definite amount of the old bill, but thereafter rendered petitioner bills for different amounts. 9. Petitioner charges that he owed defendant no unpaid old accounts and informed defendant of that fact, but that on or about November 28, 1932, the defendant again rendered petitioner an account, rendering an item of $10.63, which was designated as an old and previous unpaid account. 10. Petitioner again informed defendant that he did not owe said old account and offered to pay the current account of $2.17, but defendant refused to accept same, demanding that he pay both the new and the previous account; that at said time petitioner informed defendant that if it proved to him the validity of the old bill, that

he would gladly and willingly pay same, but that defendant failed and refused to give him any proof of the correctness of said item. 11. That thereafter, on the 30th day of November, 1932, about four o'clock p. m. the defendant, against the protest of petitioner, discontinued his gas service by cutting off the supply of gas at his home. 12. That said defendant is conducting, operating, and maintaining a business of supplying gas to persons, firms, and corporations in Atlanta, Georgia, under and by virtue of a franchise granted unto it by said city, and under said franchise it is obligatory upon said defendant to furnish to its customers gas for household use under certain reasonable rules and regulations as to deposits and payments to be made by such customers; further, that under the laws of Georgia it is obligatory upon the defendant to provide and furnish customers with gas upon the compliance by the latter with certain rules and regulations fixed by said defendant under its franchise and the laws of Georgia. 13. That said petitioner complied with all requirements, rules, and regulations demanded of him, and that said defendant was in duty bound to furnish him with gas. 14. That under the laws of Georgia said defendant is liable in damages to your petitioner by reason of the facts hereinbefore alleged. 15. That the actings and doings of said defendant as hereinbefore alleged are illegal, wrong, and tortious, and resulted in damages as hereinafter alleged to your petitioner, for which said defendant is liable to your petitioner. 16. Petitioner shows that at the time said defendant cut off said gas that his wife had a severe case of flu and was confined to her bed, and that, by reason of the inability to use the gas for cooking and medicinal purposes during the balance of the day when the gas was cut off and for several days subsequent thereto, his wife's illness became more intense and her recovery was delayed. 17. Petitioner shows that owing to the fact that said gas was cut off as hereinbefore alleged, he lost the services of his wife for a considerable length of time, and he hereby sues for such damage. 18. Petitioner further shows that it was necessary for him, in order to obtain facilities for cooking his meals and heat for household purposes, to purchase an electric stove for the sum of $160, and make a contract to be supplied with electric power, and by reason of this fact he was damaged in and to the sum of $200. 19. Your petitioner charges that under the laws of Georgia he is entitled to punitive and exemplary dam-

ages, and he sues for same." There is then a prayer for damages in the sum of $5000.

■ Counsel in the case differ as to the nature or character of the action brought, that is, whether the petition sounds in tort or in contract. We might say at the outset that we are of the opinion that the petition is one ex delicto. The defendant is a corporation with "full power and authority to make, manufacture and sell gas, to be made of coal, rosin, or other materials, for lighting the streets, public and private buildings, and other places in the City of Atlanta," and "authorized and empowered to lay down in any and all of the streets, lanes, avenues, alleys, squares and public grounds of said city, gas-pipes and other apparatus for conducting gas through the same, and to erect therein such gas-posts, burners and reflectors as may be necessary or convenient." Ga. L. 1855-6, p. 420. See also charter amendment adopted in 1889 (Ga. L. 1889, p. 1398), empowering the defendant company to make, furnish, and sell gas and electricity for all uses to which it may be put advantageously, and further authorizing and empowering it to lay pipes and conduits, and to erect poles and to run wires, either above or below the surface of the street, as may be desirable. It is undoubtedly true that, as a general rule, no one is compelled to do business with any one that he does not choose to do business with. There are, however, well-recognized exceptions to this rule. "Gas companies, being engaged in a business of a public character, are charged with the performance of public duties. Their use of the streets, whose fee is held by the municipal corporation in trust for the benefit of the public, has been likened to the exercise of the power of eminent domain. Accordingly, a gas company is bound to supply gas to premises with which its pipes are connected. It may, however, impose reasonable conditions." 2 Beach, Private Cor. § 835 d. In Gibbs v. Consolidated Gas Co., 130 U. S. 396 (9 Sup. Ct. 553, 32 L. ed. 979), the court said as to the character of a corporation like the one here under consideration: "The supplying of illuminating gas is a business of a public nature to meet a public necessity. It is not a business like that of an ordinary corporation engaged in the manufacture of articles that may be furnished by individual effort." In Richmond Natural Gas Co. v. Clawson, 155 Ind. 659 (58 N. E. 1049, 51 L. R. A. 744), the court said, in considering a case similar to the one at bar: "The Richmond Natural Gas

Company was incorporated on the 5th of March, 1886, under the laws of this State, and obtained a franchise or privilege from the City of Richmond, Wayne county, Indiana, granting the said company the right to lay under its streets, alleys, and avenues, etc., its gas-pipes and mains for the supply of natural gas to said city and the citizens thereof, subject to the conditions and regulations in the ordinance set out and provided. The rule of the common law so universally recognized and enforced declares that persons, either artificial or natural, engaged in conducting a business which is public in its character or nature, or which is impressed with a public interest, can not arbitrarily select their patrons, but must serve impartially, or on equal terms and at reasonable rates, all who apply for service." The court further said in that case that such a corporation "is a creature of the law, and the rights and privileges conferred upon it by the State, in theory at least, were granted, not only for its own private benefit, but also for the benefit and good of the public; and in accepting them it, impliedly at least, agreed to carry out the purposes or objects of its creation, and assumed a duty or obligation towards the public which it will, under the law, be required to discharge."

The case of Haugen v. Albina Light & Water Co., 21 Or. 411 (28 Pac. 244, 14 L. R. A. 424), was an action for writ of mandamus to compel the defendant corporation to supply the plaintiff with water. It was shown that the corporation was operating under a franchise granted to it by the city of which the plaintiff was a resident, and that it had the authority to lay its pipes in its streets for such purpose. The court, in a very lucid discussion of the nature and character of the corporation, said: "From this statement of the case, as presented by the pleadings, the court below held that, when the defendant entered upon and laid down its water mains in the street, in pursuance of the privileges granted by the ordinance, it became bound to supply every abutter upon the street with water. The contention for the defendant is that the ordinance does not impose the duty upon it to furnish water, but only, if it shall furnish water, that the charge therefor shall not exceed a certain sum herein specified; that the grant is to lay pipes through the streets for the purpose of conducting water through the city in the mode prescribed, and so as not to interfere with the construction of sewers; but that it contains no provision requiring it to

supply the city or its inhabitants with water; hence the ordinance imposes no duty upon the company to furnish water to any one. . . The effect to be given to the fact that the defendant company was incorporated, under the law, to furnish water to the city and its inhabitants, and the implied obligation which the defendant assumed by accepting the grant or franchise under the ordinance, is entirely overlooked. The defendant is treated as a private corporation, and not of a public nature, and to meet a public necessity; and, as a consequence, that it should not be subjected to duties or obligations that are not binding upon other private corporations. . . The defendant by incorporating, under the statute, for the purpose of supplying water to the city and its inhabitants, undertook a business which it could not have carried on without the grant of eminent domain over the streets in which to lay its pipes. It was by incorporating for this purpose, and in accepting the grant, it became invested with a franchise belonging to the public, and not enjoyed of common right, for the accomplishment of public objects, and the promotion of the public convenience and comfort. Its business was not of a private, but of a public nature, and designed, under the conditions of the grant, as well for the benefit of the public as the company." The reasoning used in that case would, of course, apply also to a gas company, as there is no *material* difference in the duties of the two companies.

We think that what was said in Shepard *v.* Milwaukee Gas Light Co., 6 Wis. 539 (70 Am. D. 479), clearly explains the relation of a gas company to the public. It was there said: "It is within the everyday experience of us all, and hence within the judicial knowledge of the court, that the manufacture and supply of inflammable gas for the purpose of lighting, [heating] cities, stores, and dwellings is not a domestic or family manufacture. It is carried on either by public or associated capital, and is dependent for its profit upon general consumption. Corporations of this kind are not like trading or manufacturing corporations, ·the purview of whose operations is as extensive as commerce itself, and whose productions may be transported from market to market throughout the world. Their product is designed for the consumption of the immediate community in which the manufacture is wrought. It is not a trading corporation, for its products depend exclusively upon home consumption."

The defendant in the case at bar is a corporation in the enjoyment of certain rights and privileges, under the laws of the State. Such rights and privileges are granted in consideration of corresponding duties and benefits inuring to the citizens in the territory where the corporation operates a franchise, and when such rights and privileges are exercised, the authorities are, with rare exceptions, uniform in holding that the corporation sustains such relations to the public that it is bound to furnish gas to all who apply therefor within its territory and agree to its reasonable rules and regulations, and that a refusal to do so is a tort. Vanderberg v. Kansas City Gas Co., 126 Mo. App. 600 (105 S. W. 17); Greenfield Gas Co. v. Trees, 165 Ind. 209 (75 N. E. 2); Town of Gassaway v. Gas Co., 75 W. Va. 60 (83 S. E. 189); Kennedy v. Manhattan Gas Light Co., 45 N. Y. 136; Public Service Gas Co. v. Newark, 86 N. J. Eq. 384 (98 Atl. 404); Citizens Gas &c. Co. v. Warden (Ind. App.), 149 N. E. 565; Attorney-General v. Haverhill Gas-Light Co., 215 Mass. 394 (101 N. E. 1061, Ann. Cas. 1914C, 1266); Seaton Mountain Electric &c. Co. v. Idaho Springs Investment Co., 49 Colo. 122 (111 Pac. 834, 33 L. R. A. (N. S.) 1078). Our courts, too, have adopted this view in *Freeman* v. *Macon Gas & Water Co.,* 126 *Ga.* 843 (56 S. E. 51, 7 L. R. A. (N. S.) 917); *Southern Bell Telephone &c. Co.* v. *Beach,* 8 *Ga. App.* 720 (70 S. E. 137); *Jenkins* v. *Southern Bell Telephone &c. Co., 7 Ga. App.* 484 (67 S. E. 124). The Civil Code, § 4407, provides that if a transaction partakes of the nature of a tort and of a contract, the party complaining may waive the one and rely on the other. Our courts have often laid down the rule that where a petition is ambiguous in failing to make clear whether the cause of action and remedy relied upon is one sounding in contract or in tort, the petition will be construed as claiming damages for a tort. See, in this connection, *Henry Cotton Mills* v. *Shoenig,* 33 *Ga. App.* 467 (127 S. E. 238). The nature of the petition will be determined from the petition as a whole and the manifest intention of the pleader.

However, without regard to these salutary principles, we do not believe that the petition could be construed as sounding in contract. A careful reading of the petition will disclose that the plaintiff does not allege, with reference to the home for which the gas was refused, that he made or signed any contract with the de-

fendant, but alleges that he made "arrangements" with the company to receive the gas. It is true that he does allege that he made a contract with the defendant for gas at some prior residence, but such an allegation would not apply to the cause of action here sued on. However, conceding ex gratias that the plaintiff has alleged that he made a contract with the defendant for it to furnish gas, we are still of the opinion that the action is one in tort. In *Southern Bell Tel. & Tel. Co.* v. *Earle*, 118 *Ga.* 506 (45 S. E. 19), the petition alleged that petitioner signed a contract with the defendant, by the terms of which the company bound itself to furnish him with a telephone, and says that he has been greatly damaged by reason of the fact that the "defendant company violated its contract, and refused to allow him the use of its telephone system." The court, in construing the nature of the petition, said: "Technically speaking, it must be admitted that the petition is more or less ambiguous. A contract to furnish telephone service is alleged, and a breach of that contract. Taking the allegations of the petition all together, however, we think it is clear that the plaintiff is seeking to recover damages on account of a breach of the duty owed him by the defendant, and that the action should be treated as one of tort." Certainly the allegations made in that case with reference to the contract were stronger than in the case sub judice, for nowhere does the petition here make any allegation of the breach of contract. See also Coy *v.* Indianapolis Gas Co., 146 Ind. 655 (46 N. E. 17, 36 L. R. A. 535).

Moreover, although a contract may be declared upon, if the action is not based on a breach of a *specific provision* of the contract, but the wrong consists in the violation of some duty merely incident to or arising out of a contract, the complainant is entitled to elect as to his remedy. *Lipscomb* v. *Watkins*, 28 *Ga. App.* 185 (110 S. E. 502). No specific provision of any contract is alleged to have been breached by the defendant; no contract is set forth or attached to the petition. Therefore, we think, under any view of the case, the petition should be construed as seeking damages for the breach of duty *imposed by law* upon the parties in consequence of their relation.

■ One item of damage alleged by the plaintiff in his petition was the loss of the services of his wife. He alleged that "at the time said defendant cut off said gas his wife had a severe case

of flu and was confined to her bed, and that by reason of the inability to use the gas for cooking and medicinal purposes during the balance of the day when the gas was cut off and for several days subsequent thereto, his wife's *illness became more intense* [italics ours ] and her recovery was delayed," and that "owing to the fact that said gas was cut off as hereinbefore alleged, he lost the services of his wife for a considerable length of time, and he hereby sues for such damage." The trial judge held that this item of damages was not recoverable. With this ruling we are inclined to agree. The Civil Code, §§ 4508, 4509, 4510, provides as follows: "'Direct' damages are such as follow immediately upon the act done. 'Consequential' damages are such as are the necessary and connected effect of the tortious act, though to some extent depending upon other circumstances." "If the damages are only the imaginary or possible result of the tortious act, or other and contingent circumstances preponderate largely in causing the injurious effect, such damages are too remote to be the basis of recovery against the wrongdoer." "Damages which are the legal and natural result of the act done, though contingent to some extent, are not too remote to be recovered. But damages traceable to the act, but not its legal or material [natural? see *Savannah Electric Co.* v. *Wheeler*, 128 *Ga.* 550, 58 S. E. 38, 10 L. R. A. (N. S.) 1176] consequence, are too remote and contingent." The alleged aggravation of petitioner's wife's illness does not seem to be the legal and natural result of the act done. No notice on the part of the defendant as to the wife's illness is shown, nor is there any bad faith shown in the defendant's acts. We are therefore of the opinion that this item of damages is not recoverable.

■ Plaintiff alleged, as his other. element of damage, "that it was necessary for him, in order to obtain facilities for cooking his meals and heat for household purposes, to purchase an electric stove for the sum of $160 and make a contract to be supplied with electrical power, and by reason of this fact he was damaged in and to the sum of $200." The Civil Code, § 4502, provides as follows: "Damages are given as compensation for the injury done, and generally this is the measure where the injury is of a character capable of being estimated in money. If the injury be small, or the mitigating circumstances be strong, nominal damages only are given." The function of the jury in this connection is to award

to the plaintiff as near as it may be estimated in money an amount which will compensate him for the injury which follows upon the tortious act. It is further provided, in § 4505: "In all cases necessary expenses consequent upon the injury done are a legitimate item in the estimate of damages." We do not think that the item of damages above set out in itself is an *exact measure* of damages recoverable for the injury done, but we are of the opinion that such item can rightfully be considered by the jury in their estimation of what amount is *reasonably* necessary to place the plaintiff, as near as it is possible, in the same position he occupied before the tortious act. If they should conceive that the amount alleged was a reasonable expense or expenditure necessary upon such act, and that such amount was reasonably necessary to compensate the plaintiff, we think that it is recoverable.

■ Even in the absence of legislative authority, the general rule is that a corporation, having for its purpose the furnishing to the general public of gas, water, etc., operating under a franchise granted by the State, may adopt reasonable rules and regulations for the collection of accounts, and a rule providing that the gas, water, etc., will be cut off and discontinued until all arrearages are paid is reasonable and will be enforced. *Dodd* v. *Atlanta,* 154 *Ga.* 33 (113 S. E. 166); *Royal* v. *Cordele,* 132 *Ga.* 125 (63 S. E. 826); *Macon Gas Light & Water Co.* v. *Freeman,* 4 *Ga. App.* 463 (61 S. E. 884). However, in order that a gas company may legally cut off gas from a consumer for failure to pay a bill, it must be shown that there is a statute, charter provision, or a regulation giving it such authority; and in the absence of one of the three, such company has no authority to cut off the consumer's supply of gas. *Dodd* v. *Atlanta,* supra. And further, where there is a valid subsisting statute, charter provision, or regulation authorizing such company to cut off the supply of gas upon failure to pay for gas furnished, and there is a dispute in good faith on the part of the consumer either as to the amount due or his liability therefor, the gas company can not shut off the supply of gas. *Dodd* v. *Atlanta,* supra. While, under the allegation of the petition that the plaintiff denied owing the account claimed by the defendant (which on general demurrer is to be taken as true), the defendant had no legal right to cut off the gas, and, while there appears no statute, charter provision, or regulation authorizing the defendant to do so on failure

to pay for gas, yet there is no allegation in the petition, nor do the facts alleged show, that such act of the defendant was malicious, wilful, or done with such gross neglect as to indicate a wanton disregard of the rights of the plaintiff. An act of a person, although without legal right or authority, upon the person or property of another, which causes damage, where done in good faith and without wilfulness, malice, or with such gross neglect as to indicate a wanton disregard for the rights of another, will not authorize the infliction of punitive damages.

■ We do not think any of the special grounds of demurrer sustained are of particular merit. The demurrer to the allegation in paragraph 5, that "in due course of time said defendant presented petitioner with a final bill which petitioner paid," as not being sufficiently specific as to when, what amount, and in what manner the bill at such address was paid, has some merit, and the judgment is reversed, with direction that the plaintiff be allowed, before the remittitur of this court is made the judgment of the lower court, to amend by making more specific this allegation; otherwise the judgment will be affirmed.

*Judgment reversed on condition. MacIntyre, J., concurs.*

BROYLES, C. J., dissenting. The bill of exceptions recites as follows: "To the petition the defendant interposed its demurrer, general and special, and upon a hearing thereon the court passed an order sustaining the general and all special demurrers and dismissing his case. To this order and judgment W. J. Lawrence [the plaintiff] then and there excepted and now excepts to the same and assigns error thereon and says that the said order and judgment is contrary to law and that the court should have overruled said *general* demurrer." (Italics mine.) The exception, properly construed, is to the judgment on the general demurrer only. Error is not "plainly and specifically" assigned upon the ruling sustaining the special demurrer, as is required by paragraph 1 of section 6140 of the Civil Code of 1910. There being no sufficient assignment of error upon the judgment sustaining the special demurrer, that ruling can not be reviewed by this court, and it has become the law of the case, and since no amendment to cure the defects in the petition pointed out by the special demurrer was offered by the plaintiff, the trial judge did not err in sustaining the general demurrer and dismissing the case.

## ON MOTION FOR REHEARING.

GUERRY, J. Counsel for defendant in error filed his motion for rehearing, contending that the opinion rendered in this case is in certain respects ambiguous. We welcome the opportunity to clarify our opinion. Nothing said therein is in conflict with the decision in *Dodd* v. *Atlanta,* 154 *Ga.* 33 (supra), but this court intended to follow the ruling there made. We held that even in the absence of legislative authority, a corporation of the character of the defendant company may adopt reasonable rules and regulations for the collection of accounts, and that "a rule providing that the gas, water, etc., will be cut off and discontinued until all arrearages are paid is reasonable and will be enforced." We did follow this by saying: "However, in order that a gas company may legally cut off gas from a consumer for failure to pay a bill, it must be shown that there is a statute, charter provision, or a regulation giving it such authority; and in the absence of one of the three, such company has no authority to cut off the consumer's supply of gas." This we thought was the ruling made in the *Dodd* case, as it will be noted that we cited that case as authority for the above statement. We did not mean to hold, as counsel puts it, "that there must be a *legislative regulation* or charter provision giving the gas company the right to refuse service," but did intend to hold that there did not inhere, in the fact that a gas bill of a consumer was in arrears, a right of the gas company to discontinue its service, but that it must show one of three things, (1) legislative authority, or (2) a charter provision, or (3) a regulation adopted by itself as a rule of the company, in order to avail itself of this right. Nor did this court intend to hold that this particular company did not have one of the three requirements above set out. Counsel contend that from the allegations of the petition (construing the petition most strongly against the pleader), this court should hold that the defendant-company did have such a rule or regulation, and therefore had the right to discontinue its service. We do not think it necessary to so hold. Even though the defendant did have the power, through one of the three modes already pointed out, to cut off the supply of gas upon failure to pay for gas furnished, yet where "there is a dispute in good faith on the part of the consumer, either as to the amount due or his liability therefor, the gas company can not shut off the supply of gas." See original opinion. Peti-

tioner alleged that he did not owe the bill contended for, and this statement is to be taken as true on general demurrer. If the evidence should disclose the *power* of the gas company to shut off the gas and the jury should believe that the plaintiff did not in good faith dispute either as to the amount due or his liability therefor, their finding should be for the defendant company. On the other hand, if the evidence should disclose no power in the defendant company to cut off the gas for failure to pay for gas furnished, or if it should be disclosed that they did have such power, but that plaintiff did not owe the account contended for, or that he in good faith disputed the amount due or his liability therefor, they should find for the plaintiff, under the rules with reference to damages already stated in the original opinion. *Rehearing denied.*