### 51471. FORD MOTOR CREDIT COMPANY et al. v. MILLINE.

CLARK, Judge.

This suit alleging wrongful repossession of an automobile by defendants dealer and finance company presents as its primary issue the question of the lawfulness of the retaking of plaintiff's car. If it was unlawful, then we proceed to consider three questions: (1) Does the evidence warrant the amount awarded as actual damages? (2) Was the conduct of defendants so reprehensible as to entitle plaintiff to punitive damages? (3) Were defendants guilty of acting in bad faith or being stubbornly litigious or causing plaintiff unnecessary expense so as to sustain the jury's award of attorney fees?

Plaintiff Milline purchased a new 1971 Mercury automobile from co-defendant Leader Lincoln-Mercury, Inc. (herein called "dealer"). The transaction was financed through co-defendant Ford Motor Credit

Company ("Ford Credit" or "finance company") under the usual retail installment loan contract. The purchase price, finance charges, and insurance premiums were to be paid in 36 monthly installments of $168.83.

On February 28, 1972, this vehicle was involved in a collision which the litigants referred to as the "first wreck." Plaintiff took his automobile to defendant dealer for repairs. During the period of repairs plaintiff rented a Comet sedan from the dealer. He became indebted for this rental and for damages to the Comet while in his possession. After the repairs had been completed, Ford Credit repossessed the automobile, taking it from the dealer's shop. No complaint is made concerning this repossession.

On May 8, 1972, when plaintiff paid Ford Credit $1,235.24 the repossessed vehicle was returned to him. This amount covered three delinquent payments, the forthcoming May installment, insurance deductible, and rental for the Comet plus damage caused to the car while in plaintiff's possession. Through clerical error by Ford Credit the entire payment was credited on the finance company's books to the installment contract so that the account appeared to be prepaid in advance. This error was not discovered until some months after a second repossession of the Mercury and the filing of the instant suit based on that second taking.

When the Mercury was involved in a second collision it was again brought to the dealer by plaintiff on August 1, 1972. While the car was there for repairs Ford Credit discovered it had failed to obtain reinstatement of plaintiff's physical damage insurance after it had been canceled upon the first repossession. This mistake was admitted by Ford Credit who voluntarily paid $1,913.28 to the dealer for repairs arising out of the "second wreck."

After completion of the repairs caused in the second accident Ford Credit decided to repossess the vehicle. At that time its records showed no payment to have been made in the period intervening since the lump sum payment of May 8th. Thus, the finance company's records showed that there was now (October 27) owed a partial amount of $44.76 for the September installment and the regular installment of $168.83 falling due the next day,

October 28. Thereafter, on October 31, 1972, the vehicle was repossessed while in dealer's possession. This was done without prior written or oral notice to the plaintiff and without notifying plaintiff of the finance company's decision to declare the entire balance due because of default. When surrendering the automobile to Ford Credit, the dealer obtained an indemnification agreement to protect itself against any claims arising out of this delivery.

On the same date (October 31) Ford Credit mailed plaintiff a form letter giving him notice of the repossession and acceleration of the balance owing under the contract. This notice also stated "You have a right to redeem the property within ten (10) days from the date of receipt of this notice upon payment of the total balance owing under the contract." (T. 619). It further stated that upon failure to redeem, the car would be sold and any resulting deficiency would be claimed.

Immediately thereafter plaintiff through his attorney demanded the return of the automobile. The result of conversations with plaintiff's lawyer was an offer by Ford Credit to return the automobile provided only that the contract was made current by payment of the partial balance for September plus the October payment. This offer was not accepted and this suit was filed against the dealer and the finance company.

During the trial the court directed a verdict for liability against the defendant dealer and denied motions by defendants for a directed verdict. Also denied were motions by defendants for directed verdicts on their counterclaim, which had been filed for the balance owing on the purchase price, and for elimination of the claims for punitive damages and litigation expenses.

The jury's verdict was against both defendants for the following sums: Value of the automobile, $4,500; hire, $3,650; attorney fees, $4,415; punitive damages $10,000. After judgment was taken on this verdict the instant appeal followed. *Held:*

1. Did the finance company have the right to repossess the vehicle without notice?

Ford Credit contends its action was permissible under the terms of its contract. The verbiage relied on

reads: "In the event buyer defaults in any payment. . . seller shall have all rights and remedies of a secured party under the Uniform Commercial Code, including the right to repossess the property wherever the same may be found with free right of entry, and to recondition and sell the same at public or private sale. . . buyer shall remain liable for any deficiency." (T. 16).

The pertinent section of the Georgia Uniform Commercial Code referred to in the contract is Code Ann. § 109A-9—503 where it is stated that "[u]nless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. . ."

Appellant cites Georgia authorities and numerous cases from other jurisdictions which have upheld the right of self-help repossession under the UCC. Among these are decisions wherein the contention of unconstitutionality has been rejected.[1]

We recognize that self-help repossession has been ruled to be legal in Georgia. See *Carter v. General Finance &c. Corp.,* 96 Ga. App. 423, 426 (100 SE2d 99) and *Jones v. Brown,* 108 Ga. App. 776, 778 (134 SE2d 440) and Code Ann. § 109A-9—503. This is in accord with the majority rule in our country. See King v. South Jersey Nat. Bank, 15 UCC Rep. Serv. 969, 972, n. 6; 69 AmJur2d 495, Secured Transactions, § 598; 79 CJS Supp. 119, Secured Transactions, § 105.

However, the contract at bar also contains additional language which was passed upon by this court in *Chrysler Credit Corp. v. Barnes,* 126 Ga. App. 444 (191 SE2d 121) and *C & S Motors, Inc. v. Davidson,* 133 Ga. App. 891 (212 SE2d 502). That language is an acceleration clause substantially identical to those ruled upon in those two cases. In *C & S Motors, Inc. v. Davidson,* supra, (p. 892), this court concluded that the acceleration clause

---

[1]See an excellent student note by Michael D. McRae in 26 Mercer L. Rev. 1421 for a discussion of James v. Pinnix, 495 F2d 206 (5th Cir. 1974).

language "required affirmative action by defendant of notifying plaintiff of its election to declare the contract in default and to accelerate it to maturity. The peremptory taking of the automobile without notice does not suffice." Accordingly, the repossession here without prior notice under the acceleration clause constituted a tort which entitled plaintiff to sue.

2. Does the evidence support the amount awarded as actual damages?

Since plaintiff's testimony established the value of the vehicle on the date of repossession as being between $4,000 and $4,500 we must hold that the award of the latter maximum sum is within the range of the evidence. Similarly, there is evidence supporting $3,650 for deprivation of use awarded as hire for the period from the date of conversion (October 31, 1972), to the date of trial (June 19, 1975).

However, the amount of the verdict for the value of the car fails to take into consideration the fact that plaintiff still owed a substantial balance on the time purchase price. Initially defendant's counterclaim sought recovery of this full balance, but by amendment the finance company pleaded that a sale of the vehicle in compliance with the contract resulted in a net unpaid balance of $2,784.17. Since plaintiff is not entitled to "have his cake and eat it too," it must be ruled that the defendants are entitled to credit for $2,784.17 under the evidence establishing its right to that amount under the counterclaim. Accordingly, the trial court erred in failing to grant defendant Ford's motion for a directed verdict as to its counterclaim.

3. Was the conduct by defendants of a nature that punitive damages were warranted?

"To authorize the imposition of punitive or exemplary damages there must be evidence of wilful misconduct, malice, fraud, wantonness, or oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences." *Southern R. Co. v. O'Bryan,* 119 Ga. 147 (1) (45 SE 1000); *Investment Securities Corp. v. Cole,* 186 Ga. 809 (199 SE 126). Our reading of the trial transcript does not show evidence of this nature so as to allow punitive damages.

Although the finance company failed to give the required notice of acceleration of the balance owing it before executing its contractual rights of self-repossession, nevertheless "An act of a person, although without legal right or authority, upon the person or property of another, which causes damages, where done in good faith and without wilfulness or malice, or such gross neglect as to indicate a wanton disregard for the rights of another, will not authorize the infliction of punitive damages." *Lawrence v. Atlanta Gas-Light Co.,* 49 Ga. App. 444 (4) (176 SE 75). The finance company repossessed by reason of a misconception of its legal rights and not with malevolent intent nor oppressive purposes.

In determining that exemplary damages should not be assessed against Ford Credit we note the following facts favorable to the finance company: upon the first default the finance company permitted redemption by correction of the default; the finance company voluntarily paid $1,913.28 for repairs on the second wreck in recognition of its mistake in failing to reinstate the canceled insurance; the contract actually was in arrears for five months even though the company's books erroneously showed only one and one-half months, but even this was after an earlier repossession when the car had been returned to plaintiff. Furthermore, on the same date as the car was taken and in connection therewith, notice of repossession was given. Thereafter, upon being contacted by plaintiff's attorney the finance company immediately offered to return the automobile upon the sole condition that the existing delinquency be corrected, which was illustrative of the company's original intent as being limited to collection of the amount which plaintiff had obligated himself to pay. Since there is no evidence of wilful misconduct, malice, fraud, wantonness or oppression or that entire want of care which would raise the presumption of indifference to consequences, the plaintiff was not entitled to punitive damages. See *NEDA Const. Co. v. Jenkins,* 137 Ga. App. 344.

4. Was plaintiff entitled to recover "attorneys fees of $4,415?"

"Attorney's fees as expenses of litigation are not punitive or vindictive damages, but stand alone, are

regulated by Code, § 20-1404, and the jury may allow them if the defendant has acted in bad faith in the transaction out of which the cause of action arose." *Williams v. Harris,* 207 Ga. 576, 579 (3) (63 SE2d 386); *Bowman v. Poole,* 212 Ga. 261 (91 SE2d 770). The regulatory Code section (§ 20-1404) referred to in the foregoing quotation reads: "The expenses of litigation are not generally allowed as a part of the damages; but if the defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

The evidence in the instant case does not show the existence of bad faith, stubborn litigiousness, or an effort to create unnecessary trouble and expenses. As to the question of bad faith, the finance company's action of self-repossession without notice was in conformance with a legally approved practice, excepting for our rulings on the contract's acceleration clause as requiring notice before acceleration of default.

It is clear that the finance company was not stubbornly litigious nor did it deliberately undertake to cause the plaintiff unnecessary trouble and expenses. Immediately upon being contacted by plaintiff's attorney it made a voluntary offer to return the vehicle upon payment of the amount owing as of that date. This was not a case of the "hand caught in the cookie jar." This proposal was reiterated in the answer as an in judicio continuing offer. No effort was made to sell the automobile until after the suit had been pending more than six months.

Additionally, we note the jury's punitive approach in awarding $4,415 when the plaintiff's attorney had testified that he valued his services at only $3,600. Although he had asked for reimbursement of an additional amount of $431 for expenses of litigation the jury's award and the judgment specifically state the allowance to be as "attorneys fees."

5. Was it proper to direct a verdict as to liability against the dealer?

Since the dealer violated the terms of the bailment the court's direction of this verdict was proper and therefore enumeration No. 14 is without merit. While liability exists, there is no evidence warranting

imposition of punitive damages or attorney fees for the reasons previously expressed in this opinion as to the finance company.

6. Although our ruling requires a write-off of punitive damages and attorney fees and an allowance for the amount of the counterclaim, we deem it proper to assess court costs against the defendants. This is because we affirm the trial court's judgment as to the finding of legal fault on the part of defendants.

*Judgment affirmed, subject to plaintiff appellee writing off punitive damages ($10,000), attorney fees ($4,415) and the net amount of counterclaim ($2,784.17); otherwise reversed. Pannell, P. J., and Quillian, J., concur.*

ARGUED NOVEMBER 5, 1975 — DECIDED JANUARY 21, 1976 — REHEARING DENIED FEBRUARY 13, 1976 —

*Levine, D'Alessio & Cohn, Sam F. Lowe, Jr., Morton P. Levine,* for appellants.

*Scheer & Elsner, Robert A. Elsner, Ronald A. Matamoros,* for appellee.