## DODD *et al. v.* CITY OF ATLANTA.

1. By its charter the City of Atlanta can shut off the water from any building or place for non-payment of water bills by a customer; and will not be compelled to again supply said building or place with water until all arrears, with interest thereon, shall be paid.

2. In the absence of legislative authority, the general rule is that those furnishing the public with its water supply, either in a private or a

municipal capacity, may adopt, as a reasonable regulation for conducting such business, a rule providing that the water so furnished may be cut off for non-payment therefor; and in pursuance of such regulation the water supply may be discontinued on the failure of the consumer to pay the water rates.

3. On the same principle a regulation providing for the turning off of water from the premises of a consumer, for his failure to pay the reasonable expenses incurred by the city in making a water connection, would be reasonable and could be promulgated and enforced in the absence of legislative authority.

4. Under the broad power conferred in the charter of the City of Atlanta upon its board of water commissioners, the latter are authorized to make a regulation for the introduction of water to operate a sprinkler system in premises used as a warehouse, and for the discontinuance of the water supply upon failure to pay the city the cost of making a water connection to the premises.

5. The authority granted to the city in its charter, to make certain water connections, and to assess the cost thereof against the property served, which can be enforced by execution, levy and sale, is not the exclusive remedy of the city for enforcing the collection of cost, and does not supersede the right of the board of water commissioners to promulgate and enforce such a regulation.

6. There is one exception to this general rule which authorizes the city to shut off the water supply for failure of the consumer to pay such charges; and that exception is, that the water supply shall not be shut off in case the consumer disputes, in good faith, either the amount due or his liability therefor.

7. In the absence of statute, charter provision, or such a regulation, the City of Atlanta, after making such water connection and turning on the water in the premises of the customer, under a contract between it and such customer, is without authority to discontinue the water supply.

8. Under such circumstances, when the City of Atlanta notified the plaintiffs of its intention to cut off the water from their premises, injunction was the proper remedy to prevent such action, where the plaintiffs denied the amount demanded by the city for making such connection, and offered to pay the amount which they admitted to be due.

9. The court erred in refusing to grant an injunction.

No. 2841. August 16, 1922.

Petition for injunction. Before Judge Pendleton. Fulton superior court. September 15, 1921.

*C. L. Pettigrew,* for plaintiffs.

*J. L. Mayson* and *J. M. Wood,* for defendant.

Fish, C. J. The City of Atlanta put in water connections for a sprinkler system for the plaintiffs' warehouse at No. 322 Peachtree street. Section 31 of the building code of the City of Atlanta provides, that buildings of this kind, fronting on one street, can not have a floor space exceeding 5000 square feet, unless equipped

with a system of automatic sprinklers, which has been approved by the Southeastern Underwriters Association. The floor area of the plaintiff's building is 5775 square feet. An approved sprinkler system was installed therein, to the satisfaction of the city; and the city turned the water into this building and sprinkler system. Plaintiffs have paid all water bills.

On April 16, 1920, plaintiffs applied to the board of water commissioners for a six-inch tap for fire service at this building, and agreed to abide by the rules and regulations of that board, a copy of which was attached to their application. The only pertinent provisions of these rules and regulations are these: "Water for fire protection will be furnished upon the condition that the owner of the property will sign the form of application and contract as prescribed by the Board of Water Commissioners. The expense of tapping the mains, making connections, testing completed work, placing valves, meters, or any other protective device, that the Board of Water Commissioners may deem necessary, and all cost of material and labor used in making or repairing said fire service at any time, must in all cases be borne by the owner of the property benefited. The pay-rolls for labor must be paid promptly by said property owner as the work progresses." In the contract the plaintiffs, in the consideration of the protection furnished them by said board, agreed to abide by and conform to all the rules of said board and the ordinances of said city. The city sent to the plaintiffs a bill for $177.40 for services in making this connection, and also a bill for $419.87 for building a manhole. Plaintiffs tendered to the city the amount of the bill for making the connection, but refused to pay the bill for building the manhole. The plaintiffs claim that the expense of constructing the manhole was not a proper charge to be borne by them, but should be borne by the telephone company or by the city; and they further assert that they told the general manager of the board that he must not have this manhole constructed, expecting it to be paid by them, but that notwithstanding such instruction the board by its manager proceeded to build this manhole. The city claims that, after this work was undertaken, it was found that a conduit of the telephone company lay immediately between the water-pipe and the sidewalk, that the water-pipe could not be run through the conduit, nor over it, but had to be run in a straight line, and that the conduit had to

be cut and a manhole built, so that the telephone wires would stop at one side and begin on the other. The city further asserts that the plaintiffs were communicated with about this situation, when they demurred to pay the costs of the construction of this manhole, but did not say that they would not pay for it, and did not order the work stopped; whereupon the city under the contract went ahead and had the telephone company build the manhole, going to all this expense for the benefit of the plaintiffs. The city notified the plaintiffs that it would cut off the water from their sprinkler system, unless its entire bill, including the costs of the manhole, was paid by the plaintiffs.

The plaintiffs filed their petition for injunction, which was refused by the lower court; and the question for our decision is, whether the court erred in refusing the injunction.

1. In the view we take of this case, it is unnecessary to decide whether the plaintiffs are liable for the expense of constructing the manhole. Conceding their liability, did the city have the right to cut off their water supply from the sprinkler system in the warehouse of the plaintiffs and thus deprive them of this fire protection? If the city did not have this right, is injunction the proper remedy of the plaintiffs to stay the threatened action of the city to cut off this water supply?

By its charter the City of Atlanta can shut off the water from any building, place or premises, for non-payment of water bills, "and shall not be compelled again to supply said building, place or premises with water until said arrears, with interest thereon, shall be paid." City of Atlanta v. Burton, 90 Ga. 486 (16 S. E. 214). Even in the absence of legislative authority, the general rule is that those furnishing the public with its water supply, either in a private or a municipal capacity, may adopt, as a reasonable regulation for conducting said business, a rule providing that the water so furnished may be cut off for non-payment therefor; and in pursuance of such regulation the water supply may be discontinued on the failure of the consumer to pay the water rates. Mansfield v. Humphreys Mfg. Co., 82 O. St. 216 (92 N. E. 233, 31 L. R. A. (N. S.) 301); Houston v. Lockwood Inv. Co. (Tex.), 144 S. W. 685; Holly v. Neodesha, 88 Kan. 102 (127 Pac. 616); Poole v. Paris Mountain Water Co., 81 S. C. 438 (62 S. E. 874, 128 Am. St. R. 923); Hatch v. Consumers Co., 17 Idaho, 204 (104

Pac. 670, 40 L. R. A. (N. S.) 263); Hayward v. East London Waterworks, 28 Ch. D. 138; Weall v. West Middlesex Waterworks Co., 1 Jac. & W. 358;. Chelsea Waterworks Co. v. Paulet, 52 J. P. 724; Hieronymus v. Bienville Water Supply Co., 131 Ala. 447 (31 So. 31); Sheward v. Citizens Water Co., 90 Cal. 635 (27 Pac. 439); *Royal* v. *Cordele, 132 Ga.* 125 (63 S. E. 826); Shiras v. Ewing, 48 Kan. 170 (29 Pac. 320); Cooper v. Goodland, .80 Kan. 121 (102 Pac. 244, 23 L. R. A. (N. S.) 410); Cox v. Cynthiana, 123 Ky. 363 (96 S. W. 456); Wood v. Auburn, 87 Me. 287 (32 Atl. 906, 29 L. R. A. 376); Robbins v. Bangor R. etc. Co., 100 Me. 496 (62 Atl. 136, 1 L. R. A. (N. S.) 963); Turner v. Revere Water Co., 171 Mass. 329 (50 N. E. 634, 40 L. R. A. 657, 68 Am. St. R. 432); McGregor v. Case, 80 Minn. 214 (83 N. W. 140); Burke v. Water Valley, 87 Miss. 732 (40 So. 820, 112 Am. St. R. 468); Mulrooney v. Obear, 171 Mo. 613 (71 S. W. 1019); Howe v. Orange, 70 N. J. Eq. 648 (62 Atl. 777); Water Supply Co. v. Albuquerque, 9 N. M. 441 (54 Pac. 969); Brass v. Rathbone, 153 N. Y. 435 (47 N. E. 905); Girard Life Ins. Co. v. Philadelphia, 88 Pa. 393; Jones v. Nashville, 109 Tenn. 550 (72 S. W. 985); Tacoma Hotel Co. v. Tacoma Light etc. Co., 3 Wash. 316 (28 Pac. 516, 14 L. R. A. 669, 28 Am. St. R. 35); Farmer v. Nashville, 127 Tenn. 509 (156 S. W. 189, 45 L. R. A. (N. S.) 240); People v. Manhattan Gas Light Co., 45 Barb. 136; 3 Dill. Mun. Cor. § 1319.

Where one party to a continuing contract fails or refuses to perform his part of it, the other party may treat the contract as at end; and this default consists in a failure to pay an installment for services or goods to be furnished from time to time. A municipality operating waterworks may avail itself of this principle, and may reasonably require payment of its water rates in advance or at stated intervals, and may, except in exceptional cases, enforce the requirement by cutting off the supply of water for non-payment of the water rates by the consumer. Hieronymus v. Bienville Water Supply Co., 131 Ala. 447 (supra). Cities should not be driven to innumerable expensive actions at law to collect small sums due for water, which in many instances would prove fruitless; and for this reason they can resort to the drastic remedy of shutting off the water supply of consumers. Holly v. Neodesha, supra. So we do not agree with learned counsel for the plaintiffs that a municipality can not adopt and enforce such a regulation unless

specially authorized so to do by legislative authority. A city can promulgate and enforce such a regulation under its power to operate its waterworks plant. But by section 151 of the act to amend the charter of the City of Atlanta, approved August 19, 1913, the board of water commissioners of that city is expressly authorized to shut off the water from any building where prompt payments for water used are not made. Ga. Laws 1913, pp. 507, 575.

One of the questions in this case is: Can a municipality by rule or regulation, where it makes a water connection for a sprinkler system for fire protection to a warehouse of consumers, and turns on the water into such system, discontinue the water supply for failure of the owners of the property to pay the costs of making the connection, where the owners, under the contract between them and the city for the construction of such connection, agreed to pay such costs, the owners in the meantime having paid all water charges for water so supplied? It would seem that, if a rule or regulation, providing for the turning off of water for failure to pay for the same, is reasonable, and can be promulgated and enforced in the absence of legislative authority, a rule or regulation providing for the shutting off the water supply for failure of the owner of a building to pay the costs of water connection would be reasonable, and could be promulgated and enforced in the absence of legislative authority. But this case does not depend on such holding. By section 156 of the act amending the charter of the City of Atlanta (Ga. Laws 1913, pp. 507, 576) the board of water commissioners is given "power to make rules and regulations respecting the introduction of water into or upon any premises." Under this broad power this board could make a rule or regulation for the introduction of water into premises under contract between the owner and the city, the cost of the connection to be paid by the owner, and further providing that the supply of water would be cut off if the owner failed to pay such cost. *Farkas* v. *Albany,* 141 *Ga.* 833 (82 S. E. 144, L. R. A. 1915A, 320, Ann. Cas. 1915C, 1195). In the last-cited case this court held that under the power contained in the charter of the City of Albany the board of water commissioners of that city had authority to adopt rules for the installation, on the sidewalk in front of the premises of a property owner, of a meter through which he could take water, to require him to pay the cost thereof, and to have the water cut off upon his

refusal to pay such cost. Under this ruling and under the above power conferred upon the board of water commissioners of Atlanta, the latter are empowered to make rules and regulations for the introduction of water in the premises, providing for the cost of making such connection, and for cutting off of water upon the failure of the property owners to pay for such cost.

Nor can we agree with counsel for the plaintiffs, that, as the city can, under certain circumstances, assess the cost of water connections against the property served, and enforce the collection thereof by execution, levy and sale, this remedy is exclusive, and supersedes the right of the city, by a duly promulgated regulation, to cut off the water supply until the charges for making a connection are paid. Conceding that this provision of the city charter applies to the situation of the plaintiffs, the city has not made any assessment against the property of the plaintiffs for these costs. If it had, the remedy for the enforcement of such assessment would be that given in this statute. If the city could proceed by the assessment method, it could also proceed by the method of shutting off the water supply, under a rule or regulation for that purpose. The right to coerce and enforce the payment of arrearages by cutting off the water supply is cumulative, and is not affected by the fact that the city may assess the cost of the connection against the property of the consumer, and collect the same by execution, levy and sale, as in cases of assessments for street improvements. 27 R. C. L. 1458, § 69; Altoona v. Shellenberger, 6 Pa. Dist. R. 544.

But there is one exception to this general rule which authorizes the city to shut off the water supply for failure of the consumer to pay such charges; and that exception is, that the water supply should not be shut off in case the consumer disputes, in good faith, either the amount due or his liability therefor. Spaulding Mfg. Co. v. Grinnell, 155 Iowa, 500 (136 N. W. 649); Benson v. Paris Mountain Water Co., 88 S. C. 351 (70 S. E. 897); Southwest Suburban Water Co. v. Guardians of the Poor, T. K. B. 174; Sheffield Waterworks Co. v. Carter, 8 Q. B. D. 645; Sedalia Brewing Co. v. Sedalia Waterworks, 34 Mo. App. 409; Borough of Washington v. Washington Water Co., 70 N. J. Eq. 254 (62 Atl. 390); McEntee v. Kingston Water Co., 165 N. Y. 27 (58 N. E. 785); Poole v. Paris Mt. Water Co., 81 S. C. 438 (62 S. E. 874, 128 Am. St. R. 923).

In this case the plaintiffs deny that they are liable to the City of Atlanta for the amount claimed by it for making this connection. It is apparent, under the pleadings and evidence, that this denial was made in good faith. Under such circumstances the city can not coerce them to pay such claims, if they are not liable therefor; or, if they are liable therefor, the city is undertaking to pursue a remedy not authorized by any rule or regulation enacted by the city in a case of this kind, or authorized by an ordinance of the city or by charter or legislative provision. Neither its charter nor any statute authorizes the city to cut off the plaintiffs' supply of water for their failure to pay the costs of this connection. The record fails to disclose any ordinance of the city, or any rule or regulation of the board of water commissioners, authorizing the application of this drastic remedy. This connection was made under a contract between the city and the plaintiffs. Under this contract the plaintiffs agreed to pay for the costs of this connection and to be bound by the rules and regulations of the water board, a copy of which is attached to the contract and made a part thereof. These rules and regulations contain no provision for cutting off of the water supply for failure of the plaintiffs to pay the expenses incurred by the city in making this connection. Under such circumstances the city could not cut off the plaintiffs' supply of water. The excellency and wisdom of our system of government consist in the fact that it is one of law, and not one depending upon the whims of men or officials.

3. What is the remedy of the plaintiffs in the premises? It is earnestly urged by counsel for the city, that, if it is without authority to cut off the water supply of the plaintiffs to their warehouse, this unauthorized action would only amount to a trespass; and that, as the city is perfectly solvent, the writ of injunction does not lie. It is insisted that the plaintiffs would have an ample remedy at law for the recovery of damages in such case. It is true that equity does not interfere to restrain a mere trespass unless the injury is irreparable, or the trespasser is insolvent, or other special circumstances exist. Civil Code, § 5493. An action for damages would not furnish the plaintiffs a complete and adequate remedy at law. They have installed a sprinkler system in their warehouse, and are operating the same for protection against fire. The damages for the deprivation of the water supply under such circum-

stances can not be easily ascertained or computed. Such damage is irreparable. In such case injunction is the proper remedy to prevent the shutting off of the water in cases where the consumer denies in good faith either his liability or the amount of the charge. Wood v. Auburn, 87 Me. 287 (supra) ; Carter v. Suburban Water Co., 131 Md. 91 (101 Atl. 771, L. R. A. 1918A, 764) ; McEntee v. Kingston Water Co., 165 N. Y. 27 (supra) ; Gordon v. Doran, 100 Minn. 343 (111 N. W. 272, 8 L. R. A. (N. S.) 1049) ; Mansfield v. Humphreys Mfg. Co., 82 O. St. 216 (supra) ; American Conduit Co. v. Kensington Water Co., 234 Pa. St. 208 (83 Atl. 70) ; Edwards v. Milledgeville Water Co., 116 Ga. 201 (42 S. E. 417) ; Royal v. Cordele, 132 Ga. 125 (supra).

The court below erred in not granting a temporary injunction restraining the defendant from cutting off the water supply of plaintiffs.

*Judgment reversed. All the Justices concur, except Gilbert, J., absent.*