**Willie DAVIS, Individually and on behalf of all others similarly situated, Plaintiff,**

v.

**Paul WEIR, General Manager, Atlanta Department of Water Works, et al., Defendants.**

Civ. A. No. 14494.

United States District Court,
N. D. Georgia,
Atlanta Division.

June 17, 1971.

Jay E. Loeb, Michael H. Terry and Alden C. Harrington, Atlanta, Ga., for plaintiff.

Henry L. Bowden & Martin McFarland, Atlanta, Ga., for all defendants.

## ORDER

MOYE, District Judge.

This suit is brought as a class action under 42 U.S.C. § 1983 and 28 U.S.C. § 2201 seeking declaratory relief with respect to certain Ordinances of the City of Atlanta, Georgia, and seeking to enjoin defendants (the Mayor, Vice-Mayor, Aldermen and General Manager of the Water Works of the City of Atlanta) from terminating water service at the plaintiff's premises and from refusing to contract with the plaintiff for continued water service.

Plaintiff and his family reside at 522 Martin Street, S.E., in Atlanta, Georgia, under a month-to-month oral lease agreement with Chapman Realty Company, under the terms of which lease, Chapman (as agent for the owner) undertook to pay all water and sewer charges at no extra charge to plaintiff in addition to his lease payments. Such charges were billed to Mr. G. Al Smith, % Chapman Realty Company, by the Department of Water Works. Plaintiff alleges that he has kept current with his rental payments and there is no contention or evidence to the contrary.

In December, 1970, water service was terminated at the premises of the plaintiff, apparently for two reasons: (1) defective plumbing at the premises which resulted in an exorbitant waste of water, and (2) the landlord's refusal to pay the outstanding water bill resulting therefrom. The plumbing was eventually corrected, and it is no longer claimed here that the plumbing is so defective as to necessitate termination of water service. The defendants' refusal to continue water service now is based solely on the fact that the large outstanding water bill has not been paid.

At the December 18, 1970, hearing on plaintiff's motion for a preliminary injunction, the grounds for which are discussed, *infra*, it was represented to the Court that the plumbing was momentarily to be repaired and that an arrangement had been made between the defendants and Chapman Realty Company whereby the outstanding water bill would be paid, and defendants' attorney represented to the Court that his clients would not discontinue water service to plaintiff's premises without notice to the plaintiff and the Court. On the basis of that representation, the Court denied the motion for a preliminary injunction.

The arrangement between the defendants and Chapman Realty Company then apparently broke down. Plaintiff renewed his motion for a preliminary injunction and a further hearing was held on April 7, 1971. Prior to that hearing, plaintiff requested the Water Department to provide him with water service in his own name. That request was refused.

At the hearing on April 7, the Court, after hearing from the parties, took the case under advisement, maintaining the *status quo* for 10 days to allow counsel an opportunity to arrange with the Water Department to continue water service to the plaintiff. On April 8, 1971, plaintiff, by letter, requested an accounting

for water charges for the period from December 18, 1970 (the date the suit was filed) so that he might tender the amount due for service provided thereafter. The Water Department did not render the requested accounting but rather rendered an accounting for the entire balance and further indicated that water service would be terminated unless the total bill was paid.

The Court held a further hearing on April 27, 1971, with respect to plaintiff's motion and suggested that defendants file a motion to dismiss, with accompanying brief, and allowed plaintiff to respond thereto. Before the Court had ruled on the motion, several events [1] occurred which appeared to have some bearing on the case, and the Court on June 3, 1971, conducted a further hearing to determine the effect of those events on the case. After determining that the matters referred to would not affect the issues herein, the Court ruled from the Bench, temporarily enjoining defendants from terminating plaintiff's water service and from refusing to contract with the plaintiff in his own name for water service. The nature of and basis for that relief is set out below.

The relevant provisions of the City of Atlanta ordinances and charter provide that the manager (of the City of Atlanta Department of Water Works) is authorized to terminate water service at any premises upon failure of any person to pay any water bill and declare that the manager is not required again to supply the premises with water until the arrears are fully paid.[2] It is also provided that the manager is required to give three days notice to the owner or tenant before termination.[3] In the instant case, it appears that the ordinance and charter provisions were followed to the letter. The landlord had not paid the water bill.[4]

1. The three events were: (1) Plaintiff had filed a suit in Fulton County Superior Court against Katherine C. Anderson (owner) and Chapman Realty Company (rental agent) for damages for failure to maintain the premises in accordance with the Atlanta Housing Code; (2) Defendants represented to the Court that the premises in question had been "placarded" and that it was unlawful, under the Atlanta Housing Code, for plaintiff to remain on the premises [the facts surrounding the alleged placarding were such that it did not affect the issues in the instant case]; (3) Ownership of the premises had apparently changed hands although Chapman Realty Company remained as the rental agent.

2. Section 33–130 of the 1965 Code of Ordinances of the City of Atlanta provides: "Upon failure of any person to pay any water bill, assessment or charge against any premises within ten days from the date such bill is due, the manager is authorized to cut off and discontinue the water service until such bill or charge is paid, and a charge of three dollars ($3.00) will be made for each cut off. Such charge must be paid before water is again turned on, unless the manager in his discretion waives such charge."
Section 7.6.16 of the Charter and Related Laws of the City of Atlanta provides: "The mayor and board of aldermen, or said committee, shall have full power and authority to require payment in advance for the use or rent of water furnished by them, in or upon any building, place or premises, and, in case prompt payment shall not be made, they may shut off the water from such building, place or premises, and shall not be compelled again to supply said building, place or premises with water until such arrears, with interest thereon, shall be fully paid."

3. Section 33–129 of the 1965 Code of Ordinances of the City of Atlanta provides: "The manager is required to give three days' notice to the owner or tenant before cutting off the water supply for nonpayment of bills. This notice may be served upon the tenant or sent by mail to the last known address of the owner."

4. There is some conflict between defendants and the landlord with respect to the landlord's liability for the water bill. Apparently due to bad plumbing, the water bill for the period since February, 1970, reached rather large proportions (over $1,800). The landlord sought credit against the bill for the leakage and was granted credit (about $800). The landlord appears to deny his liability for the remainder of the bill (over $1,300 as of April, 1971) on the ground that the Water Department was negligent in allowing the bill to reach the substantial amount that it did. The defendants continue to demand payment of the total bill less the credit.

Notice was sent to the landlord (% Chapman Realty Company) that the water service would be terminated unless the bill was paid. No notice was given to the plaintiff (tenant) by the Department of Water Works. The bill was not paid and the service was terminated. It has never been contended by defendants in this case that the plaintiff, as tenant, is liable for the bill. Plaintiff argues, in support of his motion for preliminary injunction, that the summary termination of his water service without affording him notice and an opportunity to contest his liability for the bill is in violation of his rights under the due process clause of the Fourteenth Amendment.

Plaintiff relies upon recent United States Supreme Court decisions which require prior notice and a hearing as a matter of due process of law before certain administrative action can be taken. Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (prior hearing required on probable liability before suspension of uninsured motorist's drivers license following accident); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L. Ed.2d 287 (1970) (prior notice and hearing required before termination of welfare benefits); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct.

1820, 23 L.Ed.2d 349 (1969) (hearing required prior to garnishment of wages).[5] The underlying principles applied in these cases may well be said to be merely a restatement of what Mr. Justice Frankfurter, some years ago, deemed essential to due process of law: " * * * the right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction." [6] Though, perhaps by necessity,[7] this broad precept has not been the subject of uniform application,[8] the underlying rationale has survived and has more recently taken the form of a "general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege'." [9] It is against a "curious patchwork" [10] of precedents in this area that the Court must determine what, if any, notions of due process of law apply to the instant case.

The Court's original concern with the application of the principles of Goldberg v. Kelly and its progeny involved several factors. First, most of the cases applying the *Goldberg* rationale involved the termination of governmental rights, privileges or benefits to which the claim-

5. For other cases employing what the Court will refer to as the *Goldberg* rationale, see cases cited in Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 and Hall v. Garson, 430 F.2d 430 (5th Cir. 1970); Caulder v. Durham Housing Authority, 433 F.2d 998 (4th Cir. 1970), cert. denied, 39 U.S.L.Week 3424 (1971); Escalera v. New York City Housing Authority, 425 F.2d 853 (2d Cir. 1970), cert. denied, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970); Java v. California Dept. of Human Resources Development, 317 F. Supp. 875 (N.D.Cal.1970), aff'd on other grounds, 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666; Sostre v. Rockefeller, 312 F.Supp. 863 (S.D.N.Y.1970); Davis v. Toledo Metropolitan Housing Auth., 311 F.Supp. 795 (N.D.Ohio 1970).

6. Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624,

646, 95 L.Ed. 817 (Frankfurter, J., Concurring).

7. "Due process is not a mechanical instrument. It is not a yardstick. It is a process. It is a delicate process of adjustment inescapably involving the exercise of judgment by those whom the Constitution entrusted with the unfolding of the process." Joint Anti-Fascist Refugee Committee v. McGrath, *supra* note 6, at 163, 71 S.Ct. at 644.

8. See, R. O'Neil, Of Justice Delayed and Justice Denied: The Welfare Prior Hearing Cases, 1970 Supreme Court Review 161.

9. Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90.

10. O'Neil, *supra* note 8, at 162.

ant was *directly entitled.*[11] There was, in those cases, some direct relationship between the person receiving the benefit and the agency which was taking the terminating action. In the instant case, the plaintiff has been receiving a benefit, water service, not by direct entitlement, but by means of (1) a lease from his landlord, and (2) a contract between his landlord and the Department of Water Works. This additional factor rendered the application of the *Goldberg* rationale less than clear and a sort of "privity" factor appeared to the Court to be a possible obstacle to a requirement that the tenant (who had no direct relationship to the Water Works) be afforded notice and a hearing. Another concern of the Court was that, since the failure of the landlord to pay the water bill was apparently the reason the water service was to be terminated, the appropriate remedy for the plaintiff might be against the landlord for breach of contract and not by suit against the defendants here. Also, even assuming that *Goldberg* was applicable and that notice and a hearing were required, the Court questioned whether "liability" (of the plaintiff) was really the appropriate or decisive inquiry. In other words, what is the necessity of a hearing to determine what is not contested, *i. e.*, the nonliability of plaintiff.

Although not lightly casting aside these factors, the Court believes they are overshadowed by the nature of the governmental function and private interest herein involved.[12] There can be no serious doubt that water is an absolute necessity of life. The City of Atlanta, through the Department of Water Works, has undertaken to provide this important necessity to the people of Atlanta. In operating as a public service, and an apparent monopoly, the City necessarily is obligated to furnish water to all members of the municipality upon application subject only to the reasonable, nondiscriminatory rules and regulations of the Department of Water Works.[13] The Court believes the fact that the City has undertaken to provide water to all members of the municipality upon application (which it has a duty to do) renders the important benefit bestowed by the City sufficiently analogous to an "entitlement" to satisfy any requirement along this line in the recent Supreme Court decisions. Goldberg v. Kelly, *supra;* Bell v. Burson, *supra.* Furthermore, the Court does not believe that lack of "privity" is determinative. The crucial factor in the instant case is that the effect of the collection procedure is to terminate an important benefit provided by a governmental agency (albeit at cost to the cus-

11. In Goldberg v. Kelly, welfare benefits were a matter of statutory "entitlement" which fact the Court appeared to emphasize. Although the "entitlement" language in the *Goldberg* opinion has been noted as a possible limitation on the scope of the decision (O'Neil, *supra* note 8 at 178–182), it has not precluded the lower federal courts from applying *Goldberg* to a variety of other situations. See cases listed in note 5. In the recent case of Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90, the Court again made reference to the "entitlement" language. See text at note 9.

12. "Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been af-

fected by governmental action." Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961), cited in Goldberg v. Kelly, 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). "The precise nature of the interest that has been adversely affected, the manner in which this was done, the reasons for doing it, the available alternatives to the procedure that was followed, the protection implicit in the office of the functionary whose conduct is challenged, the balance of hurt complained of and good accomplished—these are some of the considerations that must enter into the judicial judgment." Joint Anti-Fascist Refugee Committee v. McGrath, *supra* note 6, 341 U.S. at 163, 71 S.Ct. at 644.

13. See Elwell v. Atlanta Gas-Light Co., 51 Ga.App. 919, 181 S.E. 599 (1935).

tomer) without notice to the person who is the actual recipient of that benefit and who is the person who will suffer a serious loss without that benefit. This result is unacceptable under Goldberg v. Kelly, Bell v. Burson, and the due process clause of the Fourteenth Amendment. The City cannot terminate water service without notice to the actual user of the service—in this case, the plaintiff.[14]

■ In addition to prior notice, the decisions involving the *Goldberg* rationale also required a hearing. In those cases, the validity and reasonableness of the summary governmental action depended upon factual findings and, since certain factual issues were the subject of conflict, a "fair hearing", with the attendant requirements of confrontation and cross-examination, was required as a matter of due process of law. The Court does not believe the same type of factual issues is involved here, insofar as the tenant is concerned. The Department of Water Works has never contended in this case that the tenant is legally liable for the water bill and the Court does not envision circumstances in which the Water Department would contract with the landlord, send the bill to the landlord, attempt to collect the bill from the landlord, attempt to terminate water service because the landlord had not paid the bill and then contend that the tenant is liable for the bill. The Court does not see what function, under the due process clause, a hearing on the tenant's liability would serve in this particular case.

■ A further fact in this case, which the Court deems to be of substantial significance, is that the plaintiff requested an accounting of the water charges accruing since the filing of this suit (so that he could tender payment therefor), which request was not honored. The plaintiff also requested that an account be set up in his own name so that he could have water service and be responsible for future water charges. This request was refused solely because of the outstanding bill for which the landlord was liable. To reject the application for water service on this ground, the Court believes, raises serious questions of equal protection of the laws under the Fourteenth Amendment. Two classes of applicants for water service result from the procedure. One class includes applicants for water service who are not indebted to the City for water service charges. The second class includes applicants who likewise are not indebted to the City for water service charges but an outstanding debt is owed by a third party for water services previously supplied at the occupied premises. The first class of applicants receives water service and the second class does not. With everything else equal, one group is denied water service only because the debt of a third party is owed to the Department of Water Works. In such circumstances, the City is conferring a benefit on one class of persons but does not confer the same benefit on another, similarly situated class of persons, and there appears to be no justification for considering that distinction to be a rational classification.[15] The position of the de-

14. It may be that, in addition to notice required by the due process clause and in connection with Court's ruling as to equal protection of the law, *infra*, defendants must also afford users of the water service generally an opportunity to contract for water service in their own names. *Cf.* Davis v. Toledo Metropolitan Housing Auth., *supra* note 5. The Court feels, as this suit is an attempted class action, this determination can be properly made if and when the class is identified and the extent of its membership is determined. Accordingly, the Court will defer ruling on this question until the class action issue is resolved. Under the facts in this

case, it is clear that plaintiff Willie Davis must be afforded that opportunity.

Although Code Section 33–129 (See note 3) provides for notice "to the owner or tenant", that provision is apparently construed as relating to the person with whom the Water Works has a contractual undertaking rather than the user of the water.

15. *See* Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1965); *See also* Developments in the Law—Equal Protection, 82 Harv.L.Rev. 1065, 1084 (1969).

fendants in this regard appears to be that the outstanding debt is so inextricably tied to the premises that its existence prevents the person occupying the premises, who is not liable for the debt, from obtaining water service. The Court feels that position is untenable. Buildings do not use water—people do. The Court holds that under the equal protection clause of the Fourteenth Amendment, the defendants may not refuse to contract with the plaintiff for water service *solely* by reason of the fact that the plaintiff's landlord may be liable to the Department of Water Works for water service provided under a prior contract.[16]

██ On the basis of the foregoing discussion, the Court temporarily enjoins defendants from terminating water service to the plaintiff, and from refusing to contract directly with the plaintiff for the provision of water service, solely on the ground of the outstanding bill incurred by plaintiff's landlord.[17] This preliminary injunction is conditioned upon the payment by plaintiff to the Department of Water Works for charges assessed for water service provided since the filing of this suit (December 18,

1970), plaintiff having previously tendered such payment. Defendants shall not be precluded from terminating water service to the plaintiff upon the failure of the plaintiff to pay any two consecutive bills within 15 days from the due date of the second bill. The Court is not restraining defendants from adopting or enforcing any nondiscriminatory regulation or ordinance designed to insure payment for water service. Insofar as concerns the water service provided the plaintiff, should the plumbing facilities at plaintiff's premises fail to function properly so as to allow water uselessly to leak resulting in substantial waste, as has previously occurred, defendants may upon as much notice as may be feasible, temporarily terminate water service until necessary repairs are made, by or for plaintiff, to alleviate such condition.

While suit was brought as a class action on behalf of "all consumers of water service from the City of Atlanta Department of Waterworks" under Rule 23(a) and (b) (2) of the Federal Rules of Civil Procedure, that question has not been fully developed, and the relief granted herein is applicable only to the named plaintiff, Willie Davis.

16. This case does not involve, and the Court does not pass upon, a situation where there is an attempt to avoid a lawful refusal to supply water to one who has defaulted in his obligations to the City Water Works and who thereafter lets the premises to another who is aware of the cutoff, but who seeks water service in his own name.

17. In granting the relief herein, the Court is aware that similar relief perhaps could have been obtained in state court. For example, in Dodd v. City of Atlanta, 154 Ga. 33, 113 S.E. 166 (1922), the Georgia Supreme Court was faced with the water termination procedures and noted: "[T]here is one exception to this general rule which authorizes the City to shut off the water supply for failure of the consumer to pay such charges; and that exception is, that the water supply should not be shut off in case the consumer dis-

putes in good faith either the amount due or his liability therefor." *Id.* at 39, 113 S.E. at 169. *Cf.* Elwell v. Atlanta Gas-Light Co., 51 Ga.App. 919, 181 S.E. 599 (1935). In suits under 42 U.S.C. § 1983, however, it is not determinative that there may be a remedy available in state court. E. g., Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Because the ordinances and practices in question here do not comport with the requirements of due process of law, the Court is of the opinion that, while relief may have been available in state court, this suit was properly brought in federal court. Nor does the Court believe the issues in this case are properly the subject of the abstention doctrine as that doctrine has been interpreted by the Supreme Court. See Reetz v. Bozanick, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Barrett v. Atlanta Richfield Co., 444 F.2d 38 (5th Cir. 1971).