497 F.2d 139
 Willie DAVIS, Individually and on behalf of all others
similarly situated, Plaintiffs-Appellees, George
Lynch, Lillie Ruth Taylor and Evelyn
White, Intervenors-Appellees,
v.
Paul WEIR, General Manager, Atlanta Department of Water
Works, et al., Defendants-Appellants.
 No. 73-3050.
 United States Court of Appeals, Fifth Circuit.
 July 18, 1974.
 
 Henry L. Bowden, Thomas F. Choyce, Henry R. Bauer, Jr., Atlanta, Ga., for defendants-appellants.
 Jay E. Loeb, Michael H. Terry, Alden C. Harrington, Atlanta, Ga., for plaintiffs-appellees.
 Before GEWIN, GOLDBERG and CLARK, Circuit Judges. CLARK, Circuit judge:
 
 
 1
 Despite the fact that Willie Davis was current in his rental payments, which included water charges, the City of Atlanta Department of Water Works terminated his water service without prior notice. Defective plumbing at the residence had resulted in an exorbitant waste of water and Davis' landlord, whose agent had been notified of the charges, had refused to pay the water bill.[1] When the Water Works declined to restore service until the bill was paid, Davis brought this Section 1983 individual and class action on behalf of all consumers of water service from the City against Paul Weir, General Manager of the Department, and other elected City officials, seeking (1) a declaration that Atlanta ordinances, which authorize the Water Works to terminate service at an address without notice to the actual user because of nonpayment of a past due account[2] and to refuse to reinstate such service or open a separate service account with the consumer until the arrears are fully discharged,[3] contravene the due process and equal protection clauses of the XIV Amendment and (2) an injunction against the defendants prohibiting such practices.
 
 
 2
 At a preliminary hearing the district court denied plaintiff's request for a temporary injunction after the landlord agreed with the Water Works to repair the defective plumbing and to pay the outstanding water bill. The Department restored service to the premises but continued to maintain the account for and to bill all service charges to the landlord. Subsequently, the arrangement broke down, and the Water Works threatened to discontinue service again. After the Water Works denied his individual application for water service at the apartment, Davis sought an accounting for the charges incurred after December 18, the on-set of this litigation. The Water Works rejected his request and, while conceding Davis' nonliability for the account, reiterated its intention to terminate his service unless the total bill was discharged. Upon condition that Davis settle the charges which had accrued under the December agreement, the district court temporarily enjoined the defendants not to terminate Davis' water service and to contract directly with him thereafter for such service. Davis v. Weir, 328 F.Supp. 317 (N.D.Ga.1971).[4] In addition, Evelyn White, Lillie Ruth Taylor and George Lynch were later permitted to intervene as plaintiffs after the Water Department had rejected their individual applications and threatened to cease service for similar nonpayment of third parties. Thereafter, the district judge ruled that the cause could proceed as a class action pursuant to Fed.R.Civ.P. 23(a) and (b)(2) and extended the grant of individual injunctive relief to the class consisting of 'users of water furnished by the City of Atlanta, Department of Water Works who do not have a contract with the city for water service in their own names.'
 
 
 3
 Upon reaching the merits the district court granted plaintiffs and the class declaratory and permanent injunctive relief, holding Atlanta City Ordinance Section 33-129, which provides for 'three days' notice to the owner or tenant' prior to termination, violative of the due process clause of the XIV Amendment since it does not affirmatively require pre-termination notice to the actual consumer. Furthermore, resorting to the traditional 'rational basis' test, the court found that the Water Works' refusal to contract for service at buildings saddled with the debt of a third-party, as authorized by City Ordinance Section 33-130 and Section 7.6.16 of the City Charter and Related Laws, coerced otherwise eligible applicants into paying water bills for which they were not liable and deprived them of the equal protection of the laws guaranteed by the XIV Amendment. Finally, invoking Fed.R.Civ.P. 23(c)(1), the court amended its prior order to redefine the class of plaintiffs as 'all present and future non-commercial users of water service provided by the City of Atlanta Department of Water Works.' Davis v. Weir, 359 F.Supp. 1023 (N.D.Ga.1973).[5]
 
 The Constitutional Issue
 
 4
 Conceding on appeal that due process demands pre-termination notice to the actual user, see, e.g., Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), defendants focus on the propriety of refusing service because of a third-party debt and the appropriateness of this controversy for class action treatment. The Water Works contends that (1) the right to water service is not a fundamental right and therefore no federal or constitutional wrong has occurred which would supply the necessary predicate for Section 1983 relief; (2) state law makes payment of all outstanding charges incurred at a given location a valid condition precedent for continued or renewed water service there, because such a debt creates a lien against the property; (3) the practice of denying service is essential to enforce collection of water charges at multi-unit dwellings with a single water meter and to protect the City's municipal revenue bond rating. In addition, defendants argue that this litigation is an inappropriate vehicle for a class determination since the court below could resolve the constitutional issues and grant appropriate relief just as well in an individual proceeding and Davis' claims are not typical of those of the entire class as ultimately defined.
 
 
 5
 There is no controversy over whether the defendants have acted under color of state law within the purview of Section 1983 or whether their activities constitute state action within the prophylactic ambit of the XIV Amendment. See, e.g., Jackson v. Metropolitan Edison Company, 483 F.2d 754 (3d Cir. 1973); Palmer v. Columbia Gas Company, 479 F.2d 153 (6th Cir. 1973); Lucas v. Wisconsin Electric Power Company, supra. The Water Works is a department of the municipal government of the City of Atlanta admittedly subject to the proscriptions of the constitutional and statutory provisos. Neither is the constitutional sufficiency of the Department's administrative procedures prior to termination any longer at issue.[6] This appeal is pointedly cast to present the rights of applicants for water service.
 
 
 6
 We conclude that the Department's discriminatory rejection of new applications for water service based on the financial obligations of third parties fails to pass XIV Amendment muster under the traditional 'rational basis' analysis. Therefore, there is no need to decide whether the Constitution accords citizens a fundamental right to municipal water service. That question would be relevant only to the propriety of invoking strict equal protection judicial scrutiny of defendants' actions in conformity with the 'compelling state interest' rationale, see, e.g., San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); Lindsey v. Normet, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 941 (1970).
 
 
 7
 The plaintiffs do not contend that they are entitled as a matter of right to free water service, or that an application for such service cannot be made subject to the payment of installation or metering charges or the posting of a security deposit.[7] Their complaint is that the Water Works has divided those who apply for its services into two categories: applicants whose contemplated service address is encumbered with a pre-existing debt (for which they are not liable) and applicants whose residence lacks the stigma of such charges. Although there is nothing in these definitions, standing alone, to distinguish either group as a better or worse credit risk, the Department only furnishes its services to the latter class.
 
 
 8
 The Supreme Court has consistently recognized that
 
 
 9
 'the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways . . .. The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' Royster Guana Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920).'
 
 
 10
 Reed v. Reed, 404 U.S. 71, 75-76, 92 Ct. 251, 253-254, 30 L.Ed.2d 225 (1971).
 
 
 11
 ' Under 'traditional' equal protection analysis, a legislative classification must be sustained, if the classification itself is rationally related to a legitimate governmental interest.' United States Department of Agriculture v. Moreno, 413 U.S. 528, 533, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1973). The Water Works urges that the practice of rejecting water service applications until all accrued debts at the premises have been extinguished facilitates collection of unpaid bills at multi-unit dwellings and preserves the City's municipal revenue bond rating. No one could doubt that the Department's methods are calculated to expedite the liquidation of unpaid bills. A collection scheme, however, that divorces itself entirely from the reality of legal accountability for the debt involved, is devoid of logical relation to the collection of unpaid water bills from the defaulting debtor. The City has no valid governmental interest in securing revenue from innocent applicants who are forced to honor the obligations of another or face constructive eviction from their homes for lack of an essential to existence-- water.[8] 'The fact that a third-party may be financially responsible for water service provided under a prior contract is an irrational, unreasonable and quite irrelevant basis upon which to distinguish between otherwise eligible applicants for water service.' Davis v. Weir, supra, 359 F.Supp. at 1027. The Department's actions offend not only equal protection of the laws, but also due process. See Bell v. Burson, supra; cf. Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972).
 
 
 12
 The theory that an unpaid water charge gives rise to a lien against Davis' rented premises does not sustain the Department's policy.[9] Rather, the existence of a security interest in the property to which water is delivered would afford the City a constitutionally valid real action means of enforcing collection of an unpaid bill in addition to a personal suit against the party liable. Hence, a lien against the property should not operate to preclude an unindebted tenant such as Davis from initiating an application for water service directly with the Department. His conditional right to service and his ensuing contractual obligation to the City would not affect lien enforcement proceedings. The City's dispute over past due charges at Davis' apartment lies solely with his landlord. To require that Davis make this payment and attempt to recover it from the landlord amounts to nothing less than condemning Davis to pay the past debt of another before he is allowed to contract for water service.[10] Finally, in view of the concededly small number of similar applicants, the miniscule percentage of the Department's revenue that is affected, the minimal cost of instituting constitutionally sufficient procedures, and the availability of other collection methods, we hold that the City has failed to demonstrate any substantial detriment to its revenue bond rating.
 
 
 13
 The Department's discrimination against these individual plaintiffs cannot be squared with the XIV Amendment. They are therefore entitled to federal judicial relief under the provisions of Section 1983. Insofar as the judgment of the district court declares Atlanta Code of Ordinances, Section 33-129, and the Department's practices thereunder unconstitutional and enjoins their continued application, it is affirmed.
 
 The Class Action Issue
 
 14
 The original complaint sought to vindicate the constitutional rights of 'all consumers of water service from the City of Atlanta, Department of Water Works.' Because the merits of a class action determination had not been fully developed, the district court deferred decision on this issue when it granted preliminary individual injunctive relief to plaintiff Davis. 328 F.Supp. at 323. Davis later sought an order certifying that the cause could be maintained as a class action to adjudicate the rights of all users of water furnished by the City of Atlanta who had not contracted for water service on their own account. He suggested that this class be divided into two subclasses defined along the lines of the two substantive issues then before the court: (1) plaintiffs 'whose water service has been terminated or can be terminated without prior notice to them'; and (2) plaintiffs 'whose water service has been terminated at their residences because of an outstanding water bill owed by another person and whose applications for water service on their own account have been refused or will be refused by the defendant until arrangements for payment of the outstanding bill . . . have been consummated.' The district judge found that the prerequisites of Rule 23(a) had been satisfied,[11] and certified the litigation for class disposition, but, in issuing class-wide preliminary injunctive relief, ruled that 'until such time as it appears to be inappropriate, the class shall consist of users of water furnished by the City . . . who do not have a contract with the city for water service in their own name.' The final judgment which is the subject of this appeal granted permanent injunctive relief to a class of plaintiffs that was redefined to include 'all present and future non-commercial users of water service provided by the City of Atlanta, Department of Water Works.' 359 F.Supp. at 1028.
 
 
 15
 The district court further determined that this cause could proceed as a Rule 23(b)(2) class action.[12] The first prerequisite of such an action demands that 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.' This language does not mandate that all members of the (b)(2) class be aggrieved by or desire to challenge the defendant's conduct. See, e.g., Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920 (2d Cir. 1968). It does require, however, that the conduct or lack of it which is subject to challenge be premised on a ground that is applicable to the entire class. 7A C. Wright & A. Miller, Federal Practice and Procedure 1775 (1972). Courts have restated this requirement in such terms that the class representative must be a member of, similarly situated to, or possess standing to assert the claims of, the entire class, be able to protect its interests fairly and adequately, and present claims or defenses which are typical of the claims or defenses of the class. The second prerequisite of such an action is satisfied if final injunctive relief for the class as a whole is appropriate. Properly restricted to Atlanta water consumers without accounts for water service in their own names, this class action meets the requirements of Rule 23(b)(2).
 
 
 16
 It is conceivable, however, that many members of a class defined to encompass 'all present and future non-commercial users of water service provided by the City,' which could easily include every resident of Atlanta, would harbor interests antagonistic to those advanced by the individual plaintiffs. See Ihrke v. Northern States Power Co., 459 F.2d 566 (8th Cir.), vacated and dismissed as moot, 409 U.S. 815, 93 S.Ct. 66, 34 L.Ed.2d 72 (1972). Moreover, in view of the fact that all Atlanta water users who receive service on their own account are already entitled to pre-termination notice by city ordinance and are not aggrieved by the City's practices under Section 33-129, the class description and relief are overly inclusive.
 
 
 17
 Davis was aggrieved by and seeks to invalidate the Department's refusal to furnish water service upon his application by virtue of his landlord's unpaid water bill. The defendant has indicated a similar unwillingness to act with regard to all persons who have not contracted for water service in their own names. Thus, the breadth of the issue joined defines the proper breadth of the class. Davis and the intervenors were members of, possessed standing to litigate the claims of, and were similarly situated to these distinctive residents of Atlanta. Water users who already have accounts in their own names are not affected by the challenged practices of the Department. The district court erred in redefining the class so broadly.
 
 
 18
 Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968) and Jenkins v. United Gas Corp., supra, teach that antagonistic interests within a class can be eliminated by realigning the cause into sub-classes that are defined congruently with the substantive issues at hand. The class of plaintiffs must be limited to residential consumers of water furnished by the City of Atlanta, Department of Water Works, who have not contracted with the City for water service in their own names. The judgment appealed from must be modified accordingly.
 
 
 19
 Affirmed in part and modified in part.
 
 
 
 [1]
 In the six month period from April 14 to October 14, 1970, the single water meter at the multi-unit apartment building, of which Davis and his family were the only occupants, registered a consumption of over 1,988,000 gallons of water, which resulted in a water bill of approximately 1433 dollars. By December the landlord's liability had, according to the Water Works, reached almost 1800 dollars. See Davis v. Weir, 328 F.Supp. 317, 319 n. 4 (N.D.Ga.1971)
 
 
 [2]
 Section 33-129 of the 1965 Code of Ordinances of the City of Atlanta provides:
 'The manager is required to give three days' notice to the owner or tenant before cutting off the water supply for nonpayment of bills. This notice may be served upon the tenant or sent by mail to the last known address of the owner.'
 
 
 [3]
 Section 33-130 of the 1965 Code of Ordinances of the City of Atlanta provides:
 'Upon failure of any person to pay any water bill, assessment or charge against any premises within ten days from the date such bill is due, the manager is authorized to cut off and discontinue the water service until such bill or charge is paid, and a charge of three dollars ($3.00) will be made for each cut off. Such charge must be paid before water is again turned on, unless the manager in his discretion waives such charge.'
 Section 7.6.16 of the Charter and Related Laws of the City of Atlanta provides:
 'The mayor and board of aldermen, or said committee, shall have full power and authority to require payment in advance for the use or rent of water furnished by them, in or upon any building, place or premises, and, in case prompt payment shall not be made, they may shut off the water from such building, place or premises, and shall not be compelled again to supply said building, place or premises with water until such arrears, with interest thereon, shall be fully paid.'
 Because Atlanta ordinances and administrative practices at issue are not of statewide application, this case is not a candidate for disposition by a Section 2281 district court of three judges in the first instance. See Board of Regents v. New Left Deucation Project, 404 U.S. 541, 92 S.Ct. 652, 30 L.Ed.2d 697 (1972); Sands v. Wainwright, 491 F.2d 417 (5th Cir. 1973); Lucas v. Wisconsin Electric Power Company, 466 F.2d 638, 644 (7th Cir. 1972) (en banc), cert. denied, 409 U.S. 1114, 93 S.Ct. 928, 34 L.Ed.2d 696 (1973). Furthermore, the City does not contend that the Johnson Act, 28 U.S.C. 1342, which protects state administrative orders affecting public utility rates, divested the court below of jurisdiction to hear plaintiff's complaint or that federal abstention under the rationale of Alabama Public Service Comm'r v. Southern Railway Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951) in deference to state court review was appropriate and improperly disregarded.
 
 
 [4]
 Davis had in fact previously tendered payment for these charges. The preliminary injunction did not prohibit the Water Works from 'adopting or enforcing any nondiscriminatory regulation or ordinance designed to insure payment for water service' or, upon substantial leakage due to defective plumbing, from terminating service after adequate notice until the plumbing had been repaired and the leakage alleviated. 328 F.Supp. at 323. The District Court also added another caveat
 'This case does not involve, and the Court does not pass upon, a situation where there is an attempt to avoid a lawful refusal to supply water to one who has defaulted in his obligations to the City Water Works and who thereafter lets the premises to another who is aware of the cutoff, but who seeks water service in his own name.'
 
 
 [328]
 F.Supp. at 323 n. 16
 
 
 [5]
 After the issuance of preliminary injunctive relief, Davis was forced to terminate his service account with the Water Works and move from his rented apartment when it was destroyed by fire. This unforeseen and unrelated event did not, however, moot the class controversy or dissolve Davis' class standing. See, e.g., Rosen v. Public Service Elec. & Gas Co., 477 F.2d 90 (3d Cir. 1973); Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1963). Observing that Davis had prosecuted this action 'with vigor and skill,' the district judge allowed him to continue as class representative as to the pretermination notice issue. 359 F.Supp. at 1025
 
 
 [6]
 See, e.g., Palmer v. Columbia Gas Company, supra; Lucas v. Wisconsin Electric Power Company, supra
 
 
 [7]
 Under state law the City's obligation to furnish water service is conditioned upon the applicant's compliance with reasonable administrative rules and regulations. Davis v. Weir, supra, 328 F.Supp. at 321; see Elwell v. Atlanta Gas Light Co., 51 Ga.App. 919, 181 S.E. 599 (1935). See also note 4, supra
 
 
 [8]
 The district court premised its constitutional inquiry on the proposition that 'water is an absolute necessity of life,' which the Water Department has undertaken to provide to the citizens
 
 
 [9]
 The Georgia courts have traditionally upheld ordinances that permit local officials to terminate and to refuse restoration of water service until delinquent charges at the meter or building, by whomever incurred, have been paid. See Harrison v. Jones, 226 Ga. 344, 175 S.E.2d 26 (1970). Dodd v. City of Atlanta, 154 Ga. 33, 113 S.E. 166 (1922), established an exception to the general rule when the water consumer, in good faith, disputes the amount due or his liability therefor. Although the defendants assert that the power to discontinue service for nonpayment, which is authorized by Section 7.6.16 of the City Charter, see note 2, supra, is a 'specie of a lien,' neither that language nor any other state law or local ordinance cited by the defendants expressly creates a lien for unpaid water bills. The Water Works concedes that it has never foreclosed on such a lien and that no recordation devices exist to place such an encumbrance on record. The lien theory apparently had its genesis in City of Atlanta v. Burton, 90 Ga. 486, 489-490, 16 S.E. 214 (1892), which reasoned that water was furnished to premises and not to people wherefore a charge 'somewhat analogous' to a lien for taxes could be imposed on the land and collected from the present occupant as a condition of further service. But see Annot., Liability of Premises, or Their Owner or Occupant, for Electricity, Gas, or Water Charges, Irrespective of Who is the User, 19 A.L.R.3d 1227, 1232-1233 (1968)
 
 
 [10]
 Since Davis and his family were the only tenants at the apartment building, the use of a single water meter here presents no collection problems. The City can always require, where appropriate, the payment of individual metering installation charges as a condition precedent to individual service in a multi-unit dwelling
 
 
 [11]
 This part of the Rule provides:
 '(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.'
 
 
 [12]
 This portion of the Rule provides:
 '(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: . . . (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;'